XAVIER BECERRA, State Bar No. 118517
Attorney General of California
KRISTIN M. DAILY, State Bar No. 186103
Supervising Deputy Attorney General
WILLIAM H. DOWNER, State Bar No. 257644
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6120
 Fax: (916) 324-5567
 E-mail: William.Downer@doj.ca.gov
*Attorneys for Defendants Scott Lunardi, Kyle Foster, and Robert J. Jones*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY LARIOS,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT LUNARDI, ET AL.,<br><br>    Defendants. | 2:15-cv-02451-MCE-CMK<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION**<br><br>Date: December 19, 2019<br>Time: 2:00 p.m.<br>Courtroom: 7<br>Judge: Hon. Morrison C. England, Jr.<br>Trial Date: None Set<br>Action Filed: November 24, 2015 |

DEFENDANTS REQUEST THE COURT TO TAKE JUDICIAL NOTICE OF THE FOLLOWING DOCUMENTS:

1. A true and correct copy of "Order" in *Manasco v. Bd. of Police Comm'rs*, No. 4:11-CV-00557-CDP, at *4-7 (E.D. Mo. Apr. 1, 2011), which can be located on the Internet at: http://www.aele.org/manasco.pdf, is attached as Defendants' Exhibit 47.

2. A true and correct copy of a Reporter's Transcript of Proceedings in the Superior Court of the State of California, in and for the County of Shasta, in *People of the State of California v.*

1

*Robin Carl Rudolph and Nathan John Santana*, No. 13F7922, September 17, 2014, attached as Defendants' Exhibit 43.

The Court may take judicial notice of both of these exhibits under Rule 201(b) of the Federal Rules of Evidence. Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may properly take judicial notice of matters in the public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Further, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). A federal court may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *United States ex rel. Robinson Rancheria Citizens Council v. Boreno, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *accord Corzine v. Baker*, No. 14–15242, 2016 WL 1169800, at *2 (9th Cir. Mar. 25, 2016). Information publicly available on the Internet is also subject to judicial notice, if the evidentiary standard contemplated by Rule 201 is otherwise met. *See e.g., Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (providing that courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true).

Here, both the decision in *Manasco v. Board of Police Commissioners* (Defendants' Exhibit 47) and the Reporter's Transcript of a September 17, 2014 hearing in the Shasta County Superior Court (Defendants' Exhibit 43) are subject to judicial notice because they are court proceedings that are not subject to reasonable dispute. In addition the *Mansaco* decision is a public record available from reliable sources on the Internet. *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F.Supp.2d 1018, 1024 n. 4 (C.D.Cal.2013). Accordingly, judicial notice of both of these items is warranted.

2

Defs.' Req. for Judicial Notice in Support of Mot. for Summary Judgment, or in the Alternative, Mot. for Summary Adjudication (2:15-cv-02451-MCE-CMK)

Dated: October 7, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
KRISTIN M. DAILY
Supervising Deputy Attorney General


/s/ WILLIAM H. DOWNER


WILLIAM H. DOWNER
Deputy Attorney General
*Attorneys for Defendants*

SA2015303210
14168794

3

Defs.' Req. for Judicial Notice in Support of Mot. for Summary Judgment, or in the Alternative, Mot. for Summary Adjudication (2:15-cv-02451-MCE-CMK)

**DEFENDANTS' EXHIBIT 47**

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MANASCO, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-00557-CDP |
| ) | |
| BOARD OF POLICE COMMISSIONERS, ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court are requests for a temporary restraining order and injunctive relief filed by Plaintiffs Nicholas Manasco, Thomas Favazza, Stephen Schroeder, and Curtis Burgdorf (collectively, "Plaintiffs") [Doc. # 16], and by Amber Burgdorf and Andrea Manasco (collectively, "Intervenors") [Doc. # 17]. Plaintiffs are police officers employed by the St. Louis Metropolitan Police Department ("Police Department") who ask that the Court enjoin Defendants from enforcing a Police Department order that compels them to produce personal cellular phone records. Intervenors are the spouses of two of the Plaintiffs. For the following reasons, the motion is granted in part and denied in part.

**I.    Background and Facts**

On or about March 8, 2011, Carlos Boles was killed by police officers and marshals after Mr. Boles shot and killed Federal Marshal John Perry. After the shooting, Officer Manasco took a photograph of Mr. Boles using his personal cell phone and sent the image

1

to Officer Favazza, who viewed it and forwarded it to Officer Burgdorf, who viewed it and forwarded it to Officer Schroeder. Officer Schroeder then sent the picture to at least one person outside the Police Department. The Internal Affairs Division of the Police Department ("IAD") learned of the taking and sending of the photograph when a third party received the photograph and informed IAD. Although Plaintiffs have admitted to either taking and sending the photograph or receiving or forwarding the photograph, Plaintiffs cannot recall to whom the picture might have been sent. As a result, IAD asked the Plaintiffs to turn over their cell phone records for review by IAD. Plaintiffs refused. Plaintiffs were then ordered to turn them over. Specifically, Sergeant William Brown of IAD issued a direct order that Plaintiffs

> produce the detailed telephone record, which indicates all texting and messaging information, to include the pictures or images that were sent and received from [the officer's personal mobile phone number], between March 8, 2011, 12 AM, thru March 18, 2011, 12 AM. The phone records will [be] hand delivered to me, in it's [sic] entirety, with no missing information. . . . Failure to Follow a Direct Order of a superior officer . . . is a violation of Police Manual 7.004 C-3-E, which carries a possible discipline of Reprimand to Dismissal.

[Doc. # 16-1, 16-2, 16-3, 16-4 (Petitioner's Exhibits 1A, 1B, 1C, 1D)]. The purpose of IAD's investigation is to determine how the photograph was disseminated and to whom; particularly, because the photograph was ultimately transmitted to Mr. Boles's family members and various media outlets.

The personal cellular phones used by Officers Manasco and Favazza are alleged to be serviced by plans solely in the names of their spouses. The cellular phone service plans

used by Officers Schroeder and Burgdorf are alleged to be jointly owned by each officer and his spouse respectively. As a result, all Plaintiffs contend that they have no control over their cell phone records because their wives won't agree to release the records to the Plaintiffs. However, neither Plaintiffs nor their wives appeared to testify at the preliminary injunction hearing. Instead, they submitted affidavits which precluded any cross examination. The Court does not find the affidavits persuasive. First, the affiants were not subject to cross examination. Second, the substance of the affidavit is not consistent with the normal expectation that a spouse would have access to telephone records for the phone that the spouse routinely uses, regardless of how the account was titled.

After being ordered by Sergeant Brown to produce their cell phone records, Plaintiffs brought this action to prevent the execution of IAD's order. They assert that IAD does not have the authority to issue its order because it amounts to an unlawful search and seizure of Plaintiffs' and their spouses' records, in violation of the Fourth Amendment.

## II.   Discussion

### A.   Standing

The Police Commission has now conceded that the Plaintiffs have standing to pursue their Fourth Amendment claims. As represented by Plaintiffs, they had control over their phones at all relevant times. The officers' spouses do not exert control over how the officers' phones are used. Thus, Plaintiffs have a protectable interest in the cell phone and cell phone records. There is simply no credible evidence that the Plaintiffs have not regularly had access to their phone records regardless of how telephone service is purchased by the family.

3

B.  **Fourth Amendment**

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." When applied to actions by a government employer such as the Police Department, a plurality of the Supreme Court has laid out a two-step inquiry: (1) whether the employee had a reasonable expectation of privacy given the "operational realities" of the workplace; and (2) if there is a legitimate expectation of privacy, the employer's intrusion for investigation of work-related misconduct must be "judged by the standard of reasonableness under all the circumstances." *O'Connor v. Ortega*, 480 U.S. 709, 725-26 (1987).

The Court will assume without deciding that Plaintiffs have an expectation of privacy in their communications on their personal cell phones. They also have an expectation of privacy in their cell phone records.

Intervenors' expectation of privacy, if any, is substantially diminished by the fact that the Plaintiffs' cell phone numbers were largely, if not exclusively, dedicated to the Plaintiffs' use and it was the Plaintiffs who largely, if not exclusively, controlled the cell phones. Having given the cell phone to a third party, the Intervenors could not reasonably expect any Fourth Amendment interest separate and distinct from their husbands to whom they gave the property. The Court has also found, contrary to the Plaintiffs' contention, that Plaintiffs do have access to their phone records. Therefore, the proper analysis here is whether the Police Department's order was reasonable as to the Plaintiffs given all the circumstances.

The Court finds that production of Plaintiffs' personal cell phone records of text

messages with image attachments between March 8, 2011 and March 18, 2011, is not an unreasonable intrusion on Plaintiffs' expectation of privacy. Plaintiffs used their personal cell phones to send or receive unauthorized work-related information–Mr. Bole's image–and therefore were on notice that they and any devices in their control that perpetuated work-related misconduct, would be subject to investigation. The Plaintiffs were aware that the photograph of Mr. Boles was unauthorized and that taking or sharing evidence from a crime scene was a violation of Police Department policy.

The Supreme Court's holding in *Quon* is distinguishable from the facts before this Court. *Quon* concerned whether the Ontario Police Department committed an unlawful search and seizure when it reviewed text message records of a pager it issued to Quon. Any legitimate expectation of privacy Quon may have had in the messages he sent from his pager was mitigated by the fact that Quon was clearly informed that pager messages on a government issued device were subject to auditing by Quon's employer. Thus, *Quon* involved private communication on a government-issued device with notice. Plaintiffs argue that because their cell phones were private and there was no notice that their cell phones would be audited, it is unreasonable for the Police Department to order their cell phone records to be produced. The Court is not persuaded by this argument because Plaintiffs used their cell phones to violate police policy.

There clearly was a need for the Police Department to determine which officers transmitted the picture of Boles and to whom the pictures were sent. As testified, the taking and transmission of the picture is a violation of Police Department policy. The Plaintiffs

answered some questions concerning the photograph but were unable to remember everyone to whom the picture was sent. By reviewing the Plaintiffs' phone records with the Plaintiffs, IAD hoped to refresh Plaintiffs' recollection of how many transmissions of the picture had been made and to whom. This would in turn assist IAD to learn whether other officers were involved in distributing the photo. An IAD officer testified at the hearing that a fifth officer had cooperated with IAD and had produced his phone records. With that information, IAD had been able to identify Plaintiffs' involvement in the taking and transmission of the photo. By reviewing Plaintiffs' phone records with Plaintiffs, IAD expects to confirm whether Plaintiffs have been truthful and whether other officers also violated Police Department policy. The investigation is ongoing and no decision has yet been made about whether discipline should be imposed against anyone and if so, how much discipline is appropriate.

While it is Plaintiffs' private cell phone records that have been ordered produced, their cell phones are regularly used for police business. More importantly, the Plaintiffs all agree that their cell phones were used to either take or transmit pictures from a crime scene, a violation of Police Department policy. This is not a case where the police are trying to determine whether a private cell phone was used in violation of Police Department policy. It is known that the cell phones in question were an instrumentality of misconduct and that the only reason that the Plaintiffs were in a position to take and transmit the pictures was because they were police officers.

Here, any legitimate expectation of privacy of Plaintiffs' was tempered by their transmission of work-related information using their personal cell phones. Work-related

information is not private but is a concern of the employer. While the Police Department has not issued a specific directive indicating that personal cell phone usage may be subject to review to the extent the phone is used for work-related purposes, the Plaintiffs were put on notice that work-related misconduct, and the manner in which it is perpetrated, is subject to investigation. IAD's current investigation pertains specifically to a relevant, narrow time frame where the transmission of Mr. Boles's photograph–which is work-related information that is the subject of officer misconduct–took place. Its dissemination among the Police Department's employees and potentially the public is of direct concern to the Police Department. As the Supreme Court concluded in *Quon*, the IAD's request is "motivated by a legitimate work-related purpose," and is "not excessive in scope" in light of its purpose, and is therefore reasonable. *See Quon*, 130 S. Ct. at 2632-33.

When determining if a preliminary injunction should issue, the most important factor the Court must weigh is the movant's probability of success on the merits. *See Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981). As discussed, the Court finds that Plaintiffs will not succeed on the merits of their claim relevant to text messages with image attachments sent by them during the relevant period. However, as to the other information requested by the Police Department, the Court is uncertain as to Plaintiffs' success on the merits and therefore, the balance of harm favors the Plaintiffs.

## II. Conclusion

For the foregoing reasons, the Court finds that production of Plaintiffs' phone records

of text messages with image attachments that were sent by Plaintiffs between March 8, 2011 and March 18, 2011, as compelled by the IAD's order, is reasonable and does not violate Plaintiffs' Fourth Amendment rights. Therefore, the Court denies Plaintiffs' and Intervenors' TRO and injunctive requests as to these records. In all other respects the preliminary injunction is GRANTED.

        s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 1, 2011
St. Louis, Missouri

**DEFENDANTS' EXHIBIT 43**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SHASTA

Hon. ANTHONY A. ANDERSON, Assigned Judge

- - oOo - -

THE PEOPLE OF THE STATE
OF CALIFORNIA,

    Plaintiff,

    vs.        No. 13 F 7922

ROBIN CARL RUDOLPH and
NATHAN JOHN SANTANA,

    Defendants.

          **ORIGINAL**

- - oOo - -

REPORTER'S TRANSCRIPT OF PROCEEDINGS

- - oOo - -

Redding,
Shasta County, California

SEPTEMBER 17, 2014

APPEARANCES:

FOR THE PEOPLE:

  Shasta County District Attorney
  1525 Court Street
  Redding, CA  96001

  BY:  LAURA SMITH, Deputy District Attorney

FOR THE DEFENDANT:

  RICHARD MAXION, Attorney-at-Law
  1650 Oregon St.  Suite 214
  Redding, CA  96001

**PAULINE C. ROBERTSON, CSR #4736**

```
1                    P R O C E E D I N G S
2                      SEPTEMBER 17, 2014
3         Before HON. ANTHONY A. ANDERSON, Judge Assigned
4                          - - oOo - -
```

5    THE COURT: Mr. Maxion, you do have a matter on
6 calendar. However, my understanding is you represent one
7 co-defendant; Mr. Kucera has one of the others?
8    MR. MAXION: I can appear especially for Mr. Kucera,
9 Your Honor, if the Court would allow me. And they're
10 co-defendants now, but after today's proceeding they wouldn't
11 be co-defendants any more. So technically we don't even need
12 Mr. Kucera.
13    THE COURT: The name of your client?
14    MR. MAXION: Rudolph. First name, Robin. He is
15 present out of custody. And this is Mr. Santana.
16    THE COURT: Okay. Now, you represent Mr. Rudolph.
17 Mr. Kucera represents Santana. And Mr. Kucera understands that
18 you're making a special appearance on his behalf?
19    MR. MAXION: Yes, Your Honor. And I think the People
20 have a motion.
21    MS. SMITH: Your Honor, if the defense stipulates
22 that the marijuana and concentrated cannabis that had been
23 seized during the service of the search warrant at
24 Mr. Santana's home can be forfeited and destroyed, the People
25 would be moving to dismiss the felony case against both
26 defendants.
27    THE COURT: Against both?
28    MS. SMITH: Yes,
29    MR. MAXION: Yes, and both defendants are willing to
30 stipulate to that, Your Honor.
31    THE COURT: So, my understanding is that any
32 controlled substances -- I should say, I'll say illegal
33 controlled substances that were seized in the search warrant,
34 executed by --
35    MS. SMITH: I believe the Shasta county interagency

```
1    narcotics task force.
2              THE COURT:  Mr. Maxion, is that your understanding as
3    well?
4              MR. MAXION:  Yes, Your Honor.
5              MS. SMITH:  That was done on the 12th day of
6    November, 2013 -- or well, yes.
7              THE COURT:  Adding that information, that those
8    illegal control substances will be destroyed.  In return, the
9    felony counts against both Mr. Santana and Mr. Rudolph will be
10   dismissed.
11             MS. SMITH:  In 13 F 7922.
12             THE COURT:  That's correct.  13 F 7922.  Does that
13   leave charges for Mr. Santana?
14             MS. SMITH:  Mr. Santana then I believe has no pending
15   charges, unless he has any violations of probation based on
16   that conduct.  However, my understanding, after speaking to
17   another attorney in our office, is that there is a misdemeanor
18   case that is not currently with the court, but should be within
19   the next few weeks.  So we would like to set an arraignment
20   date for that new case.
21             MR. MAXION:  That's fine, Your Honor.
22             THE COURT:  That makes sense.  And you said it's a
23   misdemeanor case?
24             MS. SMITH:  Yes.
25             THE COURT:  Madam Clerk, it's set arraignment on that
26   misdemeanor for Mr. Santana, give him a date?
27             THE CLERK:  Well, what, two weeks?
28             MS. SMITH:  Two weeks would be fine.
29             THE CLERK:  October 6th at 8:30.
30             MR. MAXION:  October 6th?
31             THE CLERK:  Misdemeanor, Department 10.
32             THE COURT:  October 6th, 8:30, Department 10.  I'll
33   order Mr. Santana to appear on that date and time on that case.
34   Now, evidently is going to be a new filing, is that correct?
35             MS. SMITH:  I believe so.
```

CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

I, PAULINE C. ROBERTSON, hereby certify that I am a Certified Shorthand Reporter of the State of California, in and for the County of Shasta, and that I took down verbatim in stenographic writing all of the testimony given and all of the proceedings had in the above-entitled matter fully, truly, and correctly, according to the best of my ability.

That my said stenographic writing contains a full, true, and correct record of all said testimony and proceedings; that I have caused my stenographic writing to be transcribed into typewriting; and that the foregoing pages constitute my said transcription of all such stenographic writing; and that the same is a full, true, accurate, and verbatim statement of all such testimony and proceedings.

DATED: OCTOBER 21, 2014

*Pauline C. Robertson*
PAULINE C. ROBERTSON, CSR No. 4736