XAVIER BECERRA, State Bar No. 118517
Attorney General of California
KRISTIN M. DAILY, State Bar No. 186103
Supervising Deputy Attorney General
WILLIAM H. DOWNER, State Bar No. 257644
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6120
 Fax: (916) 324-5567
 E-mail: William.Downer@doj.ca.gov
*Attorneys for Scott Lunardi, Kyle Foster and Robert Jones*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY LARIOS,<br><br>                           Plaintiff,<br><br>    v.<br><br>SCOTT LUNARDI, ET AL.,<br><br>                           Defendants. | 2:15-cv-02451-MCE-CMK<br><br>**DECLARATION OF LESTER JAMES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION** |

I, Lester James, declare:

1. All of the facts set forth below are of my personal knowledge and, if called upon to testify, I could and would competently testify to the following.

2. I was employed by the Redding Police Department as a police officer for 17 years. I served at the rank of Sergeant for approximately seven years. I retire from service in April 2019.

3. During my time as a Redding Police Sergeant, I served as the Commander of the Shasta Interagency Narcotics Task Force (SINTF) for approximately five years. As a SINTF Commander, I became familiar with the SINTF's mission, policies, and practices.

4. SINTF was a collaborative law enforcement venture comprised of the Shasta County Sheriff's Office, Shasta County Probation, Redding Police Department, Anderson Police

1

Department, and the California Highway Patrol that engaged in efforts to reduce narcotics within Shasta County. The mission of SINTF was to significantly diminish the availability and use of illegal drugs in the County of Shasta and apprehend the responsible offenders, thereby increasing public safety. Working in conjunction, the agencies participating in SINTF endeavored to achieve its mission by enforcing the controlled substance laws of the State of California as expressed in the Health and Safety Code, and applicable federal laws relating to the trafficking of controlled substances.

5. I am familiar with California Highway Patrol (CHP) Officer Timothy Larios (Officer Larios).

6. Officer Larios served as an Agent on SINTF between approximately July 2012 and September 2014. I was Officer Lario's direct supervisor within his assignment to SINTF.

7. During the time Officer Larios served as a SINTF Agent, SINTF was also staffed by Agents Kip Kinneavy, an Officer in the Redding Police Department, and Tom Moon, a Sheriff's Deputy in the Shasta County Sheriff's Office.

8. During the time Officer Larios served as a SINTF Agent, SINTF had a policy in place that governed the use of informants. A true and correct copy of SINTF's policy governing informants at the time Officer Larios was assigned to SINTF is attached as Defendants' Exhibit 33.

9. Under section 10.1 of the attached SINTF policy on informants, "[a]n informant is a person, not a member of a law enforcement, who provides law enforcement information or assistance concerning suspected criminal activity."

10. Under section 10.6 of the attached SINTF policy on informants, "[r]elationships between Shasta Interagency Narcotics Task Force Agents and informants shall be completely ethical and professional in nature. Fraternization with an informant in any way other than in an official capacity is strictly prohibited. When contacting informants, SINTF Agents shall have another agent or law enforcement officer present. Only during actual undercover situations may a SINTF Agent be alone with an informant. Exceptions require the prior approval of the SINTF Commander."

2

Declaration of Lester James in Support of Defendants' Motion for Summary Judgment or in the Alternative Motion for Summary Adjudication (2:15-cv-02451-MCE-CMK)

11. Based on my experience as a SINTF Commander, the SINTF policy expressed in Exhibit 33, section 10.6 prohibits SINTF Agents from having intimate or romantic relationships with informants.

12. I am familiar with the policy reasons for prohibiting SINTF Agents from fraternizing with or having an unprofessional relationship with an informant. Such relationships are forbidden for multiple reasons, including the possibility that such a relationship (1) would adversely affect an Agent's impartiality or judgment with respect to the Agent's professional responsibilities; (2) could jeopardize the safety of the informant, the Agent, and allied agency personnel; and (3) could compromise the integrity of an investigation and bring discredit to SINTF and the agencies supporting SINTF.

13. Under section 10.3 of the attached SINTF policy on informants, "[n]o SINTF Agent shall refuse to identify the identity of an informant while testifying in court, when ordered to do so by the presiding judge or magistrate."

14. While Officer Larios was serving as a SINTF Agent, SINTF issued Officer Larios a smart-type cellular telephone (SINTF phone) for the express purpose of conducting SINTF business, including communicating with informants.

15. On or about September 2, 2014, I received a phone call from Captain Anthony Bertain of the Shasta County Sheriff's Office who requested that I come by his office. That same day, I met with Captain Bertain and Sheriff's Deputy Nick Thompson at the Sheriff's Office. Deputy Thompson informed me that he responded to a domestic violence call at the residence of the alleged domestic violence victim (who I later learned was Tawnya Mellow) on August 31, 2014. According to Deputy Thompson, the victim alleged that her boyfriend Nathan Santana physically assaulted her after Santana found a greeting card on a vehicle parked outside of her residence. Deputy Thompson stated that Santana alleged that he found a Hallmark-type greeting card on the windshield of a vehicle in the driveway and stated that the victim told him that the author of the card was Tim Larios. Deputy Thompson further stated that Santana told him that the greeting card allegedly left by Officer Larios was a love card, a romantic card that mentioned a trip to Lake Tahoe. Deputy Thompson also told me that while he was interviewing the victim

3

regarding the domestic violence incident, he observed a Harley Davidson whose rider had a face mask and helmet drive by the residence multiple times. Deputy Thompson stated that he thought that the rider of the motorcycle might be Officer Larios. Deputy Thompson further stated that he responded to a welfare check at the victim's residence that Officer Larios had requested a few weeks before the domestic violence incident, and that Santana informed him that while Santana was at the victim's residence a white car and a Harley Davidson motorcycle kept passing by and honking the horn at the house. According to Deputy Thompson, Santana told Thompson that Officer Larios had arrested him after serving a search warrant at his residence, and that Santana planned to inform his attorney of the alleged relationship between the victim and Officer Larios as proof of wrongdoing by Officer Larios. Captain Bertain related that they were bringing these incidents to my attention because they knew that Officer Larios was working on a long-term investigation and was working undercover, and they did not know if there were any confidentiality concerns that were raised by Officer Larios's alleged involvement in the domestic violence incident.

16. During my September 2, 2014 meeting with Captain Bertain and Nick Thompson of the Shasta County Sheriff's Office, they provided me with a copy of their investigation report prepared in connection to their response to the August 31, 2014 domestic violence incident involving Nathan Santana. A true and correct copy of the Shasta County Sheriff's Office Report that was given to me by Deputy Nick Thompson is attached as Defendants' Exhibit 34.

17. After meeting with Captain Bertain and Nick Thompson, I confirmed that the victim in the domestic violence case was Tawnya Mellow and that she was an informant in an investigation into Nathan Santana that Officer Larios was assigned to as the lead investigator. I was able to confirm that Tawnya Mellow was Officer Larios's confidential informant by reviewing the case file for the Nathan Santana investigation, SINTF investigation number SH2013-00074.

18. On or about September 2, 2014, after meeting with Captain Bertain and Nick Thompson, I called CHP Sergeant Greg Ziegler at the CHP Redding Area office and asked to meet with Sergeant Ziegler in person. I met with Sergeant Ziegler at a Redding Starbucks that

4

same day and explained that Officer Larios may have compromised a SINTF investigation by having personal contact with an informant. I then related the allegations regarding Officer Larios and the domestic violence incident at Tawnya Mellow's residence that was explained to me that day by Shasta County Sheriff's Deputy Nick Thompson.

19. On or about September 2, 2014, after meeting with Sergeant Ziegler, I met and spoke with Officer Larios. During our meeting, I informed Officer Larios about the allegations that there was a relationship between him and alleged domestic violence victim Tawnya Mellow that Deputy Nick Thompson had related to me. Officer Larios confirmed that Tawnya Mellow was a citizen informant that had provided Officer Larios with information that led to a search warrant in an investigation of Nathan Santana, in which approximately 158 pounds of marijuana was seized and Nathan Santana was arrested. Officer Larios, however, denied having an intimate relationship with Tawnya Mellow. Officer Larios admitted that he placed a greeting card on a car parked at Tawnya Mellow's residence with the intent that Nathan Santana would find it, believe that Mellow was in a long-term relationship, and that Santana would leave her alone. Officer Larios told me that the handwritten messages he wrote in the greeting card were not true, but rather a ruse to have Santana believe that Mellow was in a relationship. Officer Larios stated that Santana had a history of violence or harassment toward Mellow and the greeting card was intended to make Santana leave Mellow alone. During our meeting, Officer Larios admitted that he went to Lake Tahoe with Tawnya Mellow after Officer Larios served the search warrant on Santana's residence and arrested him. Officer Larios stated that he knew Tawnya Mellow before she provided assistance to him in the Santana investigation as a confidential informant. Officer Larios claimed that he did not recognize her when he contacted her regarding the Santana investigation because so much time had gone by and because the name she used at the time was not the name he knew her by. Officer Larios denied recognizing Mellow's voice on the phone. Officer Larios stated that he and Tawnya Mellow rekindled their friendship after the search warrant had been served in the Santana case, after they bumped into one another in public. Officer Larios stated that as time progressed he and Mellow realized that she was the one who had provided him with information about Santana. Officer Larios stated that at the time he took

5

the trip to Lake Tahoe with Tawnya Mellow, he knew that she was the confidential informant that provided him information on the Santana investigation.

20. After meeting with Officer Larios on September 2, 2014, I called CHP Sergeant Ziegler and confirmed to Sergeant Ziegler that Officer Larios did have a contact with an informant outside of their professional relationship and that this contact may have jeopardized a SINTF investigation. Sergeant Ziegler asked me to have Officer Larios report to Sergeant Ziegler at the Redding Area office.

21. On or about September 2, 2014, I contacted the United States Drug Enforcement Agency (DEA) Agent Christopher DeFreece to inform him about the allegations regarding Officer Larios and confidential informant Tawnya Mellow. I informed Agent DeFreece about the allegations against Officer Larios because I knew that Officer Larios was working in an undercover capacity in a joint state and federal investigation of a Drug Trafficking Organization (DTO) called Operation RPM. Agent DeFreece requested that I provide him with a written summary of the allegations against Officer Larios with respect to his confidential informant. I provided such a summary via email. A true and correct copy of my September 2, 2014 email to Agent DeFreece that summarized the allegations against Larios, which I later forwarded to CHP Lieutenant Kyle Foster on September 3, 2014, is attached as Defendants' Exhibit 35.

22. On or about September 17, 2014, I spoke to CHP Sergeants Scott Lunardi and Mel Hutsell, and arranged to meet with them on September 22, 2014. I informed them that Officer Larios still had SINTF property in his possession, including his SINTF phone, a laptop computer, and flash drives.

23. On September 22, 2014, I met with CHP Sergeants Scott Lunardi and Mel Hutsell at the SINTF office in Redding. I provided them with a copy of Officer Larios's criminal investigation report related to the Nathan Santana investigation, SINTF Case Number SH2013-00074. The report including the statement of probable cause in support of a search warrant application for Nathan Santana's residence. The Hobbs Affidavit portion of the statement of probable cause is retained with the Shasta County Superior Court under seal. A true and correct copy of the Officer Larios's criminal investigation report related to the Nathan Santana

investigation, SINTF Case Number SH2013-00074, that I provided to CHP Sergeants Lunardi and Hutsell is attached as Defendants' Exhibit 21. A true and correct copy of the Statement of Probable Cause (absent the Hobbs Affidavit that I provided to CHP Sergeants Lunardi and Hutsell is attached as Defendants' Exhibit 20.

24. On or about September 23, 2014, I provided CHP Sergeants Lunardi and Hutsell with a copy of the SINTF policy pertaining to Confidential Informant management contained in Defendants' Exhibit 33. Defendants' Exhibit 33 is a true and correct copy of the policy that I provided to Sergeants Lunardi and Hutsell.

25. On or about September 25, 2014, I provided Sergeant Lunardi with a copy of a SINTF Daily Intelligence Memorandum (DIM) dated September 18, 2013, regarding a confidential informant that contacted SINTF to provide information related to Nathan Santana's involvement in marijuana sales. I located this DIM from the Nathan Santana Investigation Case File, SINTF Case Number SH2013-00074. A true and correct copy of the September 18, 2013 DIM providing information regarding Nathan Santana's involvement in marijuana sales that I provided to Sergeant Lunardi is attached as Defendants' Exhibit 19.

26. On or about October 1, 2014, I participated in an interview with CHP Sergeants Lunardi and Hutsell. The interview was recorded with my consent. During the October 1, 2014 interview with Lunardi and Hutsell, I provided them with information about SINTF, Officer Larios's role and performance in SINTF, the information provided to me by the Shasta County Sheriff's Office on September 2, 2014, my discussions with Officer Larios regarding the allegations about his relationship with Tawnya Mellow that occurred on September 2, 2014, my knowledge of SINTF policy regarding confidential informant management, and my expectations regarding SINTF Agent accepted practice and behavior. On that same day, I provided Sergeants Lunardi and Hutsell a tutorial on how to use the Shasta County law enforcement database, PUBSAFE AS 400, and demonstrated for them how to conduct searches for Tawnya Mellow and variations of Mellow's name and know phone number that was provided in the DIM. These searches revealed a list of multiple incidents under the name Tawnya Mellow.

7

Declaration of Lester James in Support of Defendants' Motion for Summary Judgment or in the Alternative Motion for Summary Adjudication (2:15-cv-02451-MCE-CMK)

27. On or about October 22, 2014, I met with CHP Sergeants Lunardi and Hutsell at the SINTF office in Redding. During this meeting I provided them with copies of voice call records from Verizon for Officer Larios's SINTF phone. A true and correct copy of the voice call records from Verizon for Officer Larios's SINTF phone that I provided to CHP Sergeants Lunardi and Hutsell is attached as Defendants' Exhibit 36.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 18TH day of SEPTEMBER 2019, in Redding, California.

_____
LESTER JAMES

SA2015303210
14113307.docx

8

Declaration of Lester James in Support of Defendants' Motion for Summary Judgment or in the Alternative Motion for Summary Adjudication (2:15-cv-02451-MCE-CMK)