1 XAVIER BECERRA, State Bar No. 118517
Attorney General of California
2 KRISTIN M. DAILY, State Bar No. 186103
Supervising Deputy Attorney General
3 WILLIAM H. DOWNER, State Bar No. 257644
Deputy Attorney General
4   1300 I Street, Suite 125
P.O. Box 944255
5   Sacramento, CA 94244-2550
Telephone: (916) 210-6120
6   Fax: (916) 324-5567
E-mail: William.Downer@doj.ca.gov
7 *Attorneys for Defendants Scott Lunardi, Kyle Foster,
and Robert Jones*

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

| | |
|---|---|
| 13 **TIMOTHY LARIOS,** | 2:15-cv-02451-MCE-CMK |
| 14                    Plaintiff, | **DECLARATION OF KYLE FOSTER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION** |
| 15           v. | |
| 16 **SCOTT LUNARDI, ET AL.,** | |
| 17                    Defendants. | |
| 18 | |

19      I, Kyle Foster, declare:

20      1.     All of the facts set forth below are of my personal knowledge and, if called upon to

21 testify, I could and would competently testify to the following.

22      2.     I am currently employed as a Captain in the California Highway Patrol (CHP) in the

23 Monterey Area office in Salinas, California.

24      3.     I began my career as a CHP Officer when I attended the CHP Academy in February

25 2005. I was assigned to the San Jose Area Office from August 2005 until September 2009 and

26 then the Redwood City Area Office until July 2014. In July 2014, I promoted to the rank of

27 Lieutenant and was assigned to the Redding Area Office until November 2015. I was assigned to

28 the CHP Northern Division Office from November 2015 until January 1, 2018. I was assigned to

1

1  the Mt. Shasta Area Office until June 30, 2019. I was promoted to the rank of Captain and

2  assigned to the Monterey Area Office in July 2019.

3      4.   I am familiar with CHP Officer Timothy Larios (Officer Larios). I was assigned to

4  the CHP Redding Area office during the time Officer Larios was reassigned from his assignment

5  as an Agent on the Shasta Interagency Narcotics Task Force (SINTF) to the Redding Area office

6  after he was implicated as having inappropriate contact with a confidential informant that may

7  have jeopardized a SINTF investigation. At the time, my direct supervisor was Captain Todd

8  Garr, Commander of the Redding Area office.

9      5.   On or about September 2, 2014, CHP Sergeant Greg Ziegler informed me that the

10  SINTF Commander, Sergeant Les James, had met with him and informed him that Officer Larios

11  was accused of leaving a Hallmark-style greeting card with romantic messages on a car outside of

12  the residence of Tawnya Mellow; a confidential informant who had provided Officer Larios

13  information in an investigation into her boyfriend, Nathan Santana. Sergeant Ziegler informed

14  me that Commander James told him that Officer Larios's suspected inappropriate relationship

15  with his informant, and conduct in furtherance of that relationship, may have jeopardized an

16  ongoing SINTF investigation.

17      6.   On or about September 2, 2014, Officer Larios was directed to report to the Redding

18  Area Office. Officer Larios arrived at the office at about 4:30 p.m. and met with Sergeant Ziegler

19  and me. During the meeting, I verbally informed Officer Larios that he would be assigned to the

20  Redding Area Office while an investigation into the allegations against him were pending.

21      7.   On or about September 3, 2014, I spoke with SINTF Commander James and was

22  briefed about the allegations that Officer Larios had an inappropriate contact with his confidential

23  informant. Commander James informed me that the allegations against Officer Larios might have

24  jeopardized a joint state and federal drug trafficking investigation in which Officer Larios was

25  working undercover. That same day, Commander James forwarded me an email string between

26  Commander James, U.S. Drug Enforcement Agency (DEA) Agent Christopher DeFreece, and

27  Assistant United States Attorney (AUSA) Michael McCoy, dated September 2, 2014, and with

28

Declaration of Kyle Foster in Support of Defendants' Motion for Summary Judgment or in the Alternative Motion
for Summary Adjudication (2:15-cv-02451-MCB-CMK)

1   the Subject "T-III". In the email chain, Commander James summarizes the allegations against

2   Officer Larios:

> The female victim reported being battered by a suspect after the suspect found a "Hallmark" type card on his windshield. The card was apparently from an unknown male, who referenced a trip the victim and the author had taken to Lake Tahoe. On or about 9/1/2014, the deputy spoke to the suspect via telephone. The suspect said the victim told him the card was from Tim Larios. The suspect was previously arrested by Agent Larios after a search warrant was served at his residence and about 158 pounds of processed marijuana was seized. The criminal case is still moving through the court process. However, attempts were made to identify the CI who'd provided the probable cause for the issuance of the search warrant which were unsuccessful. The suspect told the deputy that he intended to inform his attorney of the alleged relationship between the victim and Agent Larios as proof of wrong doing on Agent Larios's part.

James also details his discussion with Larios about his involvement with the victim CI:

> In speaking to Agent Larios, he admits to knowing the victim/CI before working the case involving the suspect. However, they'd never dated and were merely acquaintances, who hadn't been in recent contact with each other for a period of a year +/-. Although Agent Larios spoke to the CI via telephone to obtain the information for the search warrant, she didn't provide the name Agent Larios knew her by and he didn't recognize her voice as one he was immediately familiar with. The service of the search warrant and the arrest of the suspect preceded Agent Larios and the CI communicating with each other again on a personal basis.

> In about December 2013, Agent Larios and the CI ran into each other and began continuing their friendship. At some point they realized that the CI had provided Agent Larios with the information that resulted in the issuance of the search warrant for the suspect's residence for marijuana.

> The CI told Larios that her relationship with the suspect involved physical violence, threats of violence, and she was in sustained fear for her physical safety. At some point, Agent Larios thought he might deter the suspect from coming around the CI if he placed the card where the suspect could find it. Agent Larios thought that if the suspect believed the CI was in a serious relationship, the suspect would leave the CI alone.

> Agent Larios said that the contents of the card weren't true. However, he admitted to going to Lake Tahoe with the CI as was stated in the card. Agent Larios insisted that his relationship with the CI was one of friendship and not intimacy.

After reviewing this email, I briefed Captain Garr about it and forwarded a copy of it to

CHP Northern Division Assistant Chief Elizabeth Barkley. A true and correct copy of this email

string is attached to this declaration as Defendants' Exhibit 35.

8.      SINTF Commander Les James also provided me with a copy of a Shasta County

Sheriff's Office investigation report describing the August 31, 2014 domestic violence incident in

which Officer Larios's confidential informant was assaulted by her boyfriend after finding a

3

1   greeting card that Officer Larios left on a car parked outside his confidential informant's

2   residence.  A true and correct copy of the Shasta County Sheriff's Office Report that was given to

3   me by SINTF Commander James is attached to this declaration as Defendants' Exhibit 34.

4        9.    On or about September 4, 2014, Officer Larios was temporarily, administratively

5   assigned to the Redding Area Office.  I prepared and issued a memorandum informing Officer

6   Larios that he was being reassigned to the Redding Area because of his possible involvement in

7   inappropriate conduct while assigned to SINTF during the pendency of the CHP's internal

8   investigation into Officer Lario's alleged inappropriate conduct.  As part of his administrative

9   reassignment, Larios was directed to return all SINTF property to SINTF Commander Les James.

10   A true and correct copy of the September 4, 2014, Memorandum, re: Temporary Administrative

11   Assignment to Redding that I signed for Captain Garr, and served on Officer Larios is attached to

12   this declaration as Defendants' Exhibit 39.

13        10.    After Officer Larios was administratively reassigned to the Redding Area Office, the

14   CHP's Internal Affairs Section (IAS) commenced an administrative investigation into Officer

15   Larios's alleged inappropriate conduct while assigned to SINTF.  Captain Garr instructed me to

16   be the point of contact at the Redding Area Office for the investigators assigned to the

17   administrative investigation into Officer Larios and to facilitate the investigation from the

18   Redding Area Office as needed.

19        11.    On or about September 17, 2014, CHP IAS Investigators Scott Lunardi and Mel

20   Hutsell contacted me and informed me that they were assigned to the administrative investigation

21   into Officer Larios and requested I provide them with a copy of the Shasta County Sheriff's

22   Office August 31, 2014 investigative report contained in Defendants' Exhibit 34.

23        12.    On September 18, 2014, I provided Investigators Lunardi and Hutsell with a copy of

24   the Shasta County Sheriff's Office August 31, 2014 investigative report contained in Defendants'

25   Exhibit 34.

26        13.    At some point between September 17 and 23, 2014, I obtained a smart-phone type

27   cellular phone that SINTF issued to Officer Larios (SINTF phone) from SINTF Commander Les

28   James.  Officer Larios's SINTF phone was a Casio G'z One Commando C771 model.

4

1  Photographs that accurately depict the SINTF phone that SINTF Commander James provided to

2  me are attached to this declaration as Defendants' Exhibit 18.

3       14.  At or near November 6, 2014, Captain Garr instructed me to contact Officer Larios

4  and instruct him to report to the Redding Area Office for a meeting with IAS Investigators

5  Lunardi and Kevin Domby.  Captain Garr informed me that Investigator Lunardi was going to

6  request that Officer Larios to produce his personal cell phone for inspection.  However, Captain

7  Garr instructed me not to disclose any such operational details to Officer Larios during the phone

8  call, and I knew not to do so given the meeting was being held pursuant to an administrative

9  investigation into alleged misconduct.

10       15.  On November 6, 2014, I called Officer Larios on his personal cell phone and asked

11  him to report to the Redding Area Office as instructed.

12       16.  When I contacted Officer Larios on November 6, 2014, I had no knowledge regarding

13  how the CHP IAS planned to obtain Officer Larios's phone beyond asking him for it.

14       17.  During the November 6, 2014 meeting, Investigator Lunardi produced a

15  memorandum instructing Officer Larios to produce his cell phone pursuant to CHP General Order

16  100.95.  I did not see this memorandum or know about it before I called Officer Larios to direct

17  him to report to the Redding Area Office.

18       18.  While I attended the meeting on November 6, 2014, I did not participate in extracting

19  or reviewing any data from Officer Larios's personal cell phone.

20       19.  At some point in time, I commented to Officer Larios that I thought a warrant or a

21  subpoena was required to inspect his phone.  However, at the time I made this comment, I was

22  not aware of the workplace misconduct investigation exception to the warrant requirement that

23  was developed in case law at the time, nor did I consider the application of CHP General Order

24  100.95 which was entitled "On-Duty Use of Cellular Telephones and Personal

25  Electronic/Entertainment Devices," permitted CHP officers to use personal cell phones, but

26  informed them that "work stored on any type of electronic device is the property of the state and

27  must be relinquished on demand."  A true and correct copy of this CHP General Order 100.95 is

28  attached to this declaration as Defendants' Exhibit 16.

5

1      I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct.

3  Executed this ___1st___ day of ___OCTOBER___ 2019, in Salinas, California.

4

5                                                                  KYLE FOSTER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Kyle Foster in Support of Defendants' Motion for Summary Judgment or in the Alternative Motion
for Summary Adjudication (2:15-cv-02451-MCE-CMK)