XAVIER BECERRA, State Bar No. 118517
Attorney General of California
KRISTIN M. DAILY, State Bar No. 186103
Supervising Deputy Attorney General
WILLIAM H. DOWNER, State Bar No. 257644
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6120
 Fax: (916) 324-5567
 E-mail: William.Downer@doj.ca.gov
*Attorneys for Defendants Scott Lunardi, Kyle Foster, and Robert Jones*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY LARIOS,**<br><br>                    Plaintiff,<br><br>v.<br><br>SCOTT LUNARDI, ET AL.,<br><br>                    Defendants. | 2:15-cv-02451-MCE-CMK<br><br>**DECLARATION OF HELENA WILLIAMS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION** |

I, Helena Williams, declare:

1. All of the facts set forth below are of my personal knowledge and, if called upon to testify, I could and would competently testify to the following.

2. I am currently employed as a Captain in the California Highway Patrol (CHP) in the Impaired Driving Section based in Sacramento, California.

3. I am a 25-year veteran of the CHP. I began my career as a CHP Officer when I attended Academy in July 1994. Between 1994 and 2002, I served as an officer in the Hollister/Gilroy Office, the Capitol Protection Unit in Sacramento, the North Sacramento Office, and Investigative Services as a Salvage Inspection Officer. In 2002 I was promoted to the rank of

1

Sergeant and assigned as a supervisor of the Criminal Law Unit at the CHP Academy in West Sacramento for approximately 4 ½ years. Between 2006 and 2009, I served as Sergeant in the North Sacramento CHP Office and a specialized position at the Office of Risk Management. In October 2012, I was promoted to the rank of Lieutenant and assigned to the CHP's Internal Affairs Section (IAS) in Sacramento as the Investigations Lieutenant. I served in that capacity until 2015 when I was assigned as the Chief Deputy Director of the California Department of Alcohol and Beverage Control. In 2017 I was promoted to the rank of Captain and was tasked with launching the Impaired Driving Section in order to address the legalization of cannabis.

4. I am familiar with the CHP's administrative investigation into CHP Officer Timothy Larios conducted by IAS because I was the CHP IAS Investigations Lieutenant at the time this administrative investigation occurred.

5. While serving as the IAS Investigations Lieutenant, CHP Assistant Chief Robert Jones was my direct supervisor.

6. On or about September 2, 2014, CHP Lieutenant, Kyle Foster of the Redding Area office informed me that Officer Larios was implicated in leaving a greeting card at the house of his confidential informant Tawnya Mellow, and that Mellow's ex-boyfriend, Nathan Santana, had discovered the card and was in an altercation with CI Mellow that resulted in Mellow calling for law enforcement assistance and reporting a domestic violence incident to Shasta County Sheriff's Office deputies. I further learned that CI Mellow had provided Officer Larios with material information between September and November 2013 in an investigation of Nathan Santana for narcotics offenses, that the information that CI Mellow provided was material to Officer Larios obtaining a search warrant to search Nathan Santana's residence; and that the execution of that search warrant led to the arrest and prosecution of Nathan Santana for possessing marijuana for sale and conspiracy offenses.

7. Upon learning that Officer Larios may have engaged in an inappropriate relationship with a confidential informant in violation of CHP policy and professional standards, I contacted the CHP's Computer Crimes Investigation Unit and requested that they immediately ascertain and

2

preserve Officer Larios's email account, any data he maintained on a shared CHP network drive called the P Drive, and his internet browsing history.

8. It is the routine and practice for the CHP, and particularly the IAS, to source all technologically-oriented investigative tasks to the CCIU because they have the hardware and expertise to conduct forensically sound extractions of electronic information. Contacting the CCIU to preserve an officer's email communications and other data is ordinarily the first step of any administrative investigation of a CHP Officer that involve communications. These tasks are typically done in the initial stages of an investigation in order to prevent the destruction of evidence that could occur once a CHP Officer has been advised that the CHP has opened an administrative investigation.

9. On or about September 8, 2014, the CHP's Assistant Commissioner of Field Operations, Chief Calvin Aubrey in conjunction with the Northern Division Assistant Chief, after consulting with Chief Jones and I, requested IAS conduct the administrative investigation into the allegations of misconduct against Officer Larios. This administrative investigation was assigned to IAS as opposed to the Redding Area office for multiple reasons. First, the investigation was a sensitive matter because Officer Larios (1) was suspected of having inappropriate contact with a confidential informant; and (2) served in an undercover capacity in SINTF. Second, based on being briefed about consultations with Officer Larios's SINTF supervisor, SINTF Commander Les James, Officer Larios was suspected of having jeopardized investigations involving state and federal allied agencies via his alleged inappropriate contact with a confidential informant. Third, it was anticipated that the administrative investigation of Officer Larios would be complex because of Officer Larios's role on SINTF, a multi-agency task force.

10. I assigned the Officer Larios administrative investigation to then-Sergeants Scott Lunardi and Mel Hutsell.

11. After assigning the investigation to Investigators Lunardi and Hutsell, I provided them with the area aware date of September 2, 2014, i.e. the date upon which the CHP became aware of the allegations against Officer Larios because under California law the state has one year to give formal notice of disciplinary charges against a peace officer after discovering alleged

3

misconduct. (See California Government Code section 3304.) I then briefed Investigators Lunardi and Hutsell regarding the objectives and initial steps of the investigation. I provided Investigator Lunardi with a copy of an email string that SINTF Commander Les James provided to the CHP in which Commander James provided a summary of the allegations against Officer Larios to United States Drug Enforcement Agency (DEA) Agent Christopher DeFreece. A true and correct copy of that email string is attached to this declaration as Defendants' Exhibit 35.

12. The objective of the Larios administrative investigation was to determine whether or not Larios engaged in an inappropriate relationship with his confidential informant, Tawnya Mellow, and the extent to which any such relationship affected the investigations he participated in.

13. It was critical for the CHP to swiftly and thoroughly determine whether Officer Larios had an inappropriate relationship with his confidential informant and the full extent to which Officer Larios's conduct in furtherance of his relationship with his confidential informant because such misconduct had potentially far-reaching and severely adverse effects to SINTF investigations, the safety of Officer Larios's informant, the safety of allied law enforcement personnel. First, Officer Larios's non-professional relationship with his Confidential Informant Mellow, and his act of leaving the greeting card at her residence with the intention that her boyfriend Nathan Santana find it, if proven true, potentially jeopardized the safety of Mellow, particularly because she had allegedly provided information to Officer Larios about her boyfriend Nathan Santana's involvement in marijuana sales during the course of SINTF's criminal investigation of Santana. Second, Officer Larios's alleged conduct, if true, demonstrated a serious lapse of judgment, professionalism, and ethics. Thus, it was imperative for the CHP to determine whether and to what extent Officer Larios had compromised or jeopardized other CHP or SINTF law enforcement activities due to the same or other failures of judgment professionalism and ethics. Third, it was incumbent upon the CHP to swiftly discover the full scope and impact of Officer Larios's alleged misconduct in order to staunch the discredit such conduct could bring to the integrity of the CHP and its investigations and, if the investigation proved that Officer Larios had indeed engaged in the misconduct he was suspected of

4

committing, to bring timely punitive disciplinary charges within the one-year statute of limitations set forth in California's Peace Officer Bill of Rights, California Government Code, section 3304(d).

14. On or around October 29, 2014, Investigators Lunardi and Hutsell briefed me about the status of the administrative investigation into Officer Larios. During this briefing they informed me that they had uncovered evidence indicating that Officer Larios had conducted work-related business using his personal cell phone, and that it was likely they would find evidence of the nature of Officer Larios's relationship with CI Mellow in text message communications with CI Mellow that were stored on Officer Larios's personal cell phone. Investigators Lunardi and Hutsell based this suspicion on the following facts: (1) CI Mellow told them that she had mostly corresponded with Officer Larios via text message both before and after the arrest of Nathan Santana; (2) SINTF Commander Les James stated that Officer Larios frequently communicated via informants via text; (3) Officer Larios indicated in a Statement of Probable Cause in support of an application for a search warrant that he had "shown" Mellow a picture of the suspect and the suspect's residence, yet there was no evidence that Officer Larios met Mellow in person until after the warrant was executed on Nathan Santana's residence; (4) Lunardi and Hutsell found no text messages between Officer Larios and CI Mellow during their examination of the cell phone that SINTF issued to Larios to conduct SINTF business; and (5) Lunardi and Hutsell did find over 100 text messages exchanged between Office Larios's SINTF phone and his personal cell phone, which indicated that he used his personal cell phone to conduct SINTF business.

15. Based on this briefing, Chief Robert Jones and I requested and received authorization to direct Officer Larios to surrender his phone to IAS Investigators Lunardi and Hutsell pursuant to CHP policy provisions in General Order 100.95, from the CHP's Professional Standards and Ethics Division Commander, Chief Andy Sechrist.

16. CHP General Order 100.95 provides that "[w]ork stored on any type of electronic device is the property of the state and must be relinquished on demand." A true and correct copy of CHP General Order 100.95 is attached to this declaration as Defendants' Exhibit 16.

5

17. On or about October 30, 2014, I relayed approval to Lunardi to direct Officer Larios to produce his phone for inspection.

18. On or about November 5, 2014, I prepared a memorandum to the CCIU's Erik Beale requesting that the CCIU conduct a data extraction of Officer Larios's personal cell phone in order to obtain work product believed to be contained on Officer Larios's cell phone. Because CCIU had indicated that the extraction may not distinguish between work product and personal data, I requested in the memorandum that CCIU provide only call logs and text messages exchanged between Officer Larios's personal cell phone, and the phone numbers of CI Mellow (530-945-4986), Officer Larios's SINTF Phone, and the SINTF phones assigned to SINTF Commander Les James, and SINTF Agents Kip Kinneavy and Tom Moon, from September 1, 2013, to "present" (November 5, 2014). I requested that CCIU limit any production to the time period between September 1, 2013, and November 5, 2014, because it encompassed the period in which Tawnya Mellow served as Officer Larios's confidential informant, and the period of time in which Officer Larios was suspected to have engaged in work misconduct by fostering a non-professional relationship with CI Mellow. A true and correct copy of the Memorandum re: Cellular Telephone Data Extraction, that I prepared on November 5, 2014, is attached to this declaration as Defendants' Exhibit 25.

19. The IAS did not investigate Officer Larios for any suspected criminal offense prior to November 6, 2014.

20. A criminal investigation was only considered by the CHP after the text messages exchanged between Officer Larios and CI Mellow that were recovered from Officer Larios's cell phone indicated that he had possibly violated multiple California penal code provisions by making false reports of crimes to Shasta Area Safety Communications Agency (SHASCOM) and divulging confidential law enforcement information to CI Mellow without authorization. The CHP declined to authorize IAS to conduct a criminal investigation of Officer Larios.

21. The CHP did not recommend that that Officer Larios be criminally charged to any prosecutorial authority.

6

Declaration of Helena Williams in Support of Defendants' Motion for Summary Judgment, or, in the alternative Motion for Summary Adjudication.   (2:15-cv-02451-MCE-CMK)

22. Internal Affairs conducted criminal interrogation of Officer Larios solely in order to inform Larios of his Miranda rights in order to comply with the California Peace Officer Bill of Rights, Government Code Section 3303(h). IAS Investigators Viktor Scrivner and Cliff Morrison were assigned to perform the criminal interrogation of Officer Larios. Investigators Scrivner and Morrison were not assigned any other roles in the investigation of Officer Larios. They were not assigned to participate in any investigation of Officer Larios from September 8, 2014 through November 6, 2014. Nor were they assigned to conduct any investigative activities involving Officer Larios beyond conducting the February 3, 2015 interrogation

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ___1___ day of October 2019, in Sacramento, California.

_____
HELENA WILLIAMS

SA2015303210
14092598.docx

7

Declaration of Helena Williams in Support of Defendants' Motion for Summary Judgment, or, in the alternative Motion for Summary Adjudication.   (2:15-cv-02451-MCE-CMK)