1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  KRISTIN M. DAILY, State Bar No. 186103
   Supervising Deputy Attorney General
3  WILLIAM H. DOWNER, State Bar No. 257644
   Deputy Attorney General
4   1300 I Street, Suite 125
    P.O. Box 944255
5   Sacramento, CA 94244-2550
    Telephone: (916) 210-6120
6   Fax: (916) 324-5567
    E-mail: William.Downer@doj.ca.gov
7  *Attorneys for Defendants Scott Lunardi, Kyle Foster,*
   *and Robert Jones*

8

                IN THE UNITED STATES DISTRICT COURT
9
              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11

12

13 | **TIMOTHY LARIOS,** | 2:15-cv-02451-MCE-CMK

14 | Plaintiff, | **DECLARATION OF CURTIS DURAY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION**

15 | v.

16

17 | **SCOTT LUNARDI, ET AL.,**

    | Defendants.
18

19      I, Curtis Duray, declare as follows:

20      1.   All of the facts set forth below are of my personal knowledge and, if called upon to

21 testify, I could and would competently testify to the following.

22      2.   I am a California Highway Patrol (CHP) Sergeant, and currently assigned to the

23 CHP's Office of Internal Affairs as an Investigator. I began my career with the CHP in

24 September 2002. Before being assigned to the Office of Internal Affairs, I worked in the

25 Computer Crimes Investigation Unit (CCIU) from April 2010 through 2017.

26      3.   I have a Bachelor's Degree in Anthropology that I obtained from the University of

27 California, Davis in 2000.

28

                                        1

4. While assigned to the CCIU I have received training and certification in the fields of Computer Crimes, EnCase Computer Forensics, Electronic Surveillance, PC Forensics, and Information Security Fundamentals. Prior to being assigned to conduct a cell phone data extraction the Larios administrative investigation, I have had experience in performing cell phone data extractions of more than 100 devices in both criminal and administrative investigations.

5. On or about November 4, 2014, I was assigned to perform an electronic data extraction of a smart phone bearing the number (530) 227-6063 in connection with the CHP's internal administrative investigation of CHP Officer Timothy Larios, ID 13100.

6. I was given a memorandum by my supervisor that instructed CCIU to limit the data produced to Internal Affairs investigators to call logs and text messages sent and received from the date of September 1, 2013, through November 5, 2014, by telephone numbers of (530) 945-4986, (530) 510-1356, (530) 510-7635, (530) 510-7634, and (530) 510-7642. A true and correct copy of the memorandum I received instructing me to limit the scope of the data extraction is attached to this declaration as Defendants' Exhibit 25.

7. On November 6, 2014, IAS Sergeant Lunardi provided me with the smart phone bearing the number (530) 227-6063 (hereinafter referred to as "Larios's personal phone") and we continued to a secure location to perform the data extraction. A CHP 36 was signed to ensure the chain of custody was preserved in accordance with policy and Larios's personal phone was placed in Airplane mode.

8. Larios's personal phone was an iPhone 4, Verizon wireless CDMA model A1349, internal model MD146LL, serial number C8QGDPFMDP0V, iOS version 5.1.1 (9B206), MEID A100001C85C2C7, and total capacity of 6.4 gigabytes. The phone was in visually poor physical condition and its screen had a significant crack on it.

9. I initially attempted to use Cellebrite's Universal Forensic Extraction Device (UFED) Touch Ultimate. The Cellebrite UFED touch is a black box with a flip up touch screen with prompts and has USB ports on the sides. To use the Cellebrite UFED to extract data from a cell phone, you have to connect the phone to the USB port. Once connected, the Cellbrite UFED device will recognize the phone that is connected to it. From this point, you can perform a

2

1   forensically sound extraction of all of the data contained on the cell phone.  The Cellebrite UFED

2   maintains evidentiary protocols by using write block function, which prevents anything from

3   writing over the original device being extracted while an exact copy of the data from it is being

4   extracted.

5        10.   After I connected Officer Larios's personal cell phone to the Cellebrite UFED, it

6   failed to recognize the phone attached to it.  As a result, I was unable to use the Cellebrite UFED

7   to obtain a data extraction from Officer Larios's personal cell phone.

8        11.   I also used Micro Systemation's XRY device to forensically extract the data from

9   Larios's personal phone.  Like the Cellebrite UFED, Micro Systemation's XRY device is capable

10   of performing a forensically sound data extraction from cellular phones without changing the

11   state of the original phone.

12        12.   After I connected Officer Larios's personal cell phone to Micro Systemation's XRY

13   device, it also failed to recognize the phone attached to it.  As a result, I was unable to use Micro

14   Systemation's XRY device to obtain a data extraction of Officer Larios's personal cell phone.

15        13.   I spent multiple hours attempting to perform the prescribed data extraction using the

16   Cellebrite and Micro Systemation forensic extraction tools but I was unable to get them to

17   function as intended with Officer Larios's personal cell phone.

18        14.   After unsuccessfully attempting a data extraction using the devices detailed in

19   paragraph 7 of this declaration, I manually located an SMS conversation string between Larios's

20   phone and the number (530) 945-4986, which was listed as "Tawnya."  Then, using a digital

21   camera Canon PowerShot, serial number 702061048759, and Canon PowerShot N, serial number

22   682050001020, Investigators Larios, Domby, and I scrolled through the text message thread

23   between Officer Larios's phone and the contact listed on Officer Larios's phone as "Tawnya,"

24   phone number (530) 945-4986, and took digital photographs and video of the SMS messages

25   exchanged between Officer Larios's personal cell phone and the phone number listed as Tawnya.

26   Soon after commencing our attempt to photograph and video Officer Larios's text messages with

27   the contact listed on Officer Larios's phone as "Tawnya," phone number (530) 945-4986, while

28   manually scrolling through the text message thread, and determining that in light of the

3

1  significant volume of text messages between Officer Larios's personal cell phone and the contact

2  listed as "Tawnya," it would take multiple additional hours to complete the manual search and

3  documentation of these messages, we decided to discontinue the manual search because it could

4  not be completed within the same day.  True and correct copies of the digital photographs and a

5  selection of still images of the video taken of the SMS conversation string between Larios's

6  phone and the number (530) 945-4986 on November 6, 2014 are attached to this declaration as

7  Exhibit 45.  As can be observed by looking at the photographs in Exhibit 45, the airplane icon in

8  the top left-hand corner of the phone indicates that airplane mode was activated at the time the

9  photographs in Exhibit 45 were taken.

10      15.    During my manual search of Officer Larios's personal cell phone, I was unable to

11  locate any SMS conversation strings between Officer Larios's cell phone and the following phone

12  numbers:  (530) 510-1356, (530) 510-7635, and (530) 510-7642.  During this manual search, I did

13  not access or examine any other part of Officer Larios's personal cell phone.

14      16.    Because of the difficulties I encountered in attempting to obtain a forensic acquisition

15  of Larios's cell phone, I created a backup of Larios's phone using an Apple MacBook Pro, asset

16  tag number 1312062, serial number C02MF2EJFD59.

17      17.    I performed this back up by connecting Officer Larios's personal cell phone to the

18  Apple MacBook Pro using a USB cord.  Once connected, the MacBook showed a prompt asking

19  "What would you like to do with this phone?"  I then opened iTunes.  After opening iTunes, the

20  iTunes programming provided several options for selection, one of which was to back up the

21  phone connected to the MacBook.  I selected this option and the MacBook backed up, i.e., copied

22  all of the data from Officer Lario's phone and saved it on the MacBook's hard drive.  Once the

23  MacBook signaled that the backup process was completed, I decoupled Officer Larios's personal

24  phone from the USB cord and gave it to Investigator Lunardi.

25      18.    On or about November 12, 2014, I exported the backup of Officer Larios's personal

26  cell phone from the MacBook Pro, asset tag number 1312062 to another MacBook Pro with the

27  asset tag number 166852 because the MacBook Pro, asset tag number 166852 was loaded with

28  the software that I intended to use to extract the data requested by Internal Affairs.  After

4

1  exporting the backup of Officer Larios's phone to the MacBook Pro, asset tag number 166852, I

2  deleted the backup on the MacBook Pro, asset tag number 1312062.

3      19.   To perform the data extraction requested by Internal Affairs, I opened the software

4  program Katana Forensics, Lantern 4 on the MacBook Pro, asset tag number 166852.  Once I

5  opened the Lantern 4 software, I accessed a visual dashboard that permits the user to open a new

6  case.  Once the "case" is opened, I received a prompt that provided a series of options of sources

7  from which to acquire the evidence.  In this case, I selected the "File/Folder/Backup" option and

8  then clicked on the continue button.  After clicking the continue button, another prompt gave me

9  the option of acquiring the backup from where it was stored on the MacBook Pro's hard drive.  I

10  selected acquire by clicking the acquire button and then allowed the Lantern 4 program to acquire

11  the backup of Officer Larios's personal cell phone that was stored on MacBook Pro, asset tag

12  number 166852.  Once the acquire function was complete, a series of icons populated in the left-

13  hand side of the Lantern 4 dashboard, including icons for Messages, Calendar, Documents, Apps,

14  and any other application contained on the backup of Officer Larios's phone that was acquired

15  and processed by the Katana Lantern 4 software.

16      20.   Once the backup of Officer Larios's phone that was acquired and processed by the

17  Katana Lantern 4 software, I was able to instruct the Lantern 4 software to isolate all SMS text

18  messages that were exchanged between Officer Larios's phone and the phone number (530) 945-

19  4986 between September 1, 2013 and November 5, 2014.  I then bookmarked or selected these

20  messages and exported them into in a HyperText Markup Language (HTML) report.  After

21  completing this extraction, I delivered it to Investigator Lunardi on a DVD.

22      21.   While handling Larios's phone on November 6, 2014, which I had placed in Airplane

23  mode, I inadvertently pressed the call button twice.  My inadvertent activation of the call button

24  twice resulted in two calls being attempted by the phone to the number (530) 945-4986; the first

25  inadvertent call attempt was made on November 6, 2014, at approximately 1403 for the duration

26  of two seconds and the second call occurred on November 6, 2014, at 1653 for one second.  I do

27  not know if these call attempts successfully connected with the phone number that was being

28  dialed.  Based on my experience working with and using smart phones, and my understanding of

5

1   the airplane mode function, the call attempts should not have been successful because airplane

2   mode is designed to prevent a phone from sending or receiving any communication via its cellular

3   network. I immediately terminated each inadvertent call attempt immediately after realizing that

4   I had inadvertently initiated the call button.

5        22.    I did not view any data on Officer Larios's personal phone or backup of Officer

6   Larios's personal phone other than the text messages and files attached to those text messages that

7   fell within the search parameters defined in paragraph 5 of this declaration and the memorandum

8   that I received from Internal Affairs and contained in Defendants' Exhibit 25.

9        23.    I did not extract any data from Officer Larios's personal phone or backup of Officer

10  Larios's personal phone other than the text messages and files attached to those text messages that

11  fell within the search parameters defined in paragraph 5 of this declaration and the memorandum

12  that I received from Internal Affairs and contained in Defendants' Exhibit 25. However, based on

13  my review of the HTML data extraction report that I prepared, it appears that the Lantern

14  program extracted one text message from a phone number that was not specified in the

15  memorandum that I received from Internal Affairs and contained in Defendants' Exhibit 25. I did

16  not request the Lantern program to extract this text from the backup of Officer Larios's personal

17  phone. It was extracted unintentionally and in error and I do not know how the error or anomaly

18  occurred.

19       24.    Although I have no specific memory of deleting the backup of Officer Larios's

20  personal cell phone from MacBook Pro, asset tag 166852, immediately after processing it using

21  Katana's Lantern 4 software, it was my ordinary practice to do so in all occasions. In or around

22  December 2016, MacBook Pro, asset tag 166852 was returned to the United States Secret Service

23  as it had been loaned to the CHP from that agency. Before returning MacBook Pro, asset tag

24  166852, to the U.S. Secret Service, I wiped it, i.e., deleted all programs, files, and software that

25  were maintained on MacBook Pro, asset tag 166852. Between the time I placed the backup of

26  Officer Larios's personal cell phone on to MacBook Pro, asset tag 166852, and the time that I

27  wiped the data from MacBook Pro, asset tag 166852, no one else had access to the laptop, nor did

28

6

1    anyone have access to my login credentials, which were necessary to access and operate

2    MacBook Pro, asset tag 166852.

3

     Executed this ___1st___ day of ___OCTOBER___ 2019, in Sacramento, California.

4

5                                                          _____
                                                                  CURTIS DURAY
6

7    SA2015303210
     12875916.docx
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Curtis Duray in Support of Defendants' Motion for Summary Judgment, or, in the Alternative,
Motion for Summary Adjudication (2:15-cv-02451-MCE-CMK)