1

2

3

4

5

6

7

8

9

10

11

12 UNITED STATES DISTRICT COURT

13 EASTERN DISTRICT OF CALIFORNIA

14

15 TIMOTHY LARIOS, No. 2:15-cv-02451-JAM-DMC

16 Plaintiff,

17 v. **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY**
18 SCOTT LUNARDI, KYLE FOSTER, **JUDGMENT**
ROBERT J. JONES,
19
Defendants.
20

21    In November 2015, Plaintiff filed a two-count complaint

22 against Joseph Farrow, the Commissioner of the California Highway

23 Patrol ("CHP") and five CHP officers: Scott Lunardi, Mel Hutsell,

24 T. A. Garr, Kyle Foster, and R. J. Jones.  Compl., ECF No. 1.  He

25 alleged Defendants violated his rights under Section 1983 and

26 California Civil Code § 52.1 ("Bane Act").  The complaint set

27 forth several theories of liability on each claim, alleging

28 violations of the First, Fourth, Fifth, Sixth, Ninth, and

1

Fourteenth Amendments.  Compl. ¶¶ 34-40.  Defendants' motions to dismiss narrowed the scope of litigation.  See ECF Nos. 12, 15, 24.  The Court dismissed all of Plaintiff's claims against Lunardi, Foster, and Jones except the Bane Act and Section 1983 claims premised upon their alleged Fourth Amendment violations.  November 10, 2016 Memo. and Order, ECF No. 22.  The Court also dismissed Farrow, Hutsell, and Garr from the suit.  Id.; May 15, 2017 Memo. and Order, ECF No. 28.

Defendants now request summary judgment on Plaintiff's remaining claims.[1]  Mot. for Summ. J. ("Mot."), ECF No. 42.  Plaintiff filed an opposition to Defendants' motion, Opp'n, ECF No. 52, to which Defendants replied.  Reply, ECF No. 53.  For the reasons discussed below, the Court grants Defendants' motion for summary judgment on Plaintiff's Bane Act claim against Lunardi, Jones, and Foster, as well as his Section 1983 claim against Foster.  The Court also grants Defendants' motion for summary judgment on Plaintiff's Section 1983 claim against Lunardi and Jones to the extent that it rests upon the theory that they conducted an unconstitutional search.

The Court, however, finds Defendants did not address the unlawful seizure theory of Plaintiff's Fourth Amendment claim until their reply brief.  Reply at 6-8, ECF No. 53.  The Court will allow Plaintiff to file a surreply addressing Defendants' argument that the Court should grant summary judgment on his claim that Defendants conducted an unlawful seizure by

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for February 11, 2020.

downloading the contents of his personal phone onto a CHP
computer.  Plaintiff must file his surreply within seven (7) days
of this Order.  It need not include an "introduction" or "factual
background" section and shall not exceed ten (10) pages.
Defendants may not file a response.

## I.  BACKGROUND

Plaintiff previously worked as a California Highway Patrol
("CHP") officer.  Plf.'s Response to Defs.' Statement of
Undisputed Facts ("RSUF") ¶ 1, ECF No. 52-1.  In the final two
years he worked for CHP, Plaintiff was an agent with the Shasta
Interagency Narcotics Task Force ("SINTF").  RSUF ¶ 2.  In this
role, Plaintiff communicated with confidential informants.  RSUF
¶ 3.  Under SINTF policy, "[a]n informant is a person, not a
member of law enforcement, who provides law enforcement
information or assistance concerning suspected criminal
activity."  RSUF ¶ 55 (citing SINTF Informant Management Policy
§ 10.1).  The policy prohibits agents from having relationships
with informants that are not "completely ethical and professional
in nature."  RSUF ¶ 56.  An agent may not contact an informant
without other law enforcement present and may not be alone with
an informant absent prior approval.  Id.

Plaintiff began communicating with confidential informant,
Tawnya Mellow, during SINTF's investigation of a suspected
marijuana dealer named Nathan Santana.  RSUF ¶ 9.  Mellow
provided information that allowed Plaintiff to obtain a search
warrant for Santana's residence.  RSUF ¶ 10.  Plaintiff executed
the warrant, uncovered contraband, and arrested Santana.  Id.

The Shasta County Deputy District Attorney charged Santana with three felony offenses.  RSUF ¶ 10-11.

Plaintiff used his personal cell phone to communicate with Mellow.  RSUF ¶ 8.  SINTF issues its agents cell phones to use for "SINTF business" such as speaking with informants.  RSUF ¶ 7.  Although SINTF policy allows agents to use their personal phones for SINTF business, it prohibits them from storing state work on their personal phones.  RSUF ¶ 4(citing CHP General Order 100.95).  Rather, agents who produce CHP work product on their personal devices must then transfer that work to an electronic data storage device.  Id.  CHP policy states, "[w]ork stored on any type of electronic device is the property of the state and must be relinquished on demand."  Id.  Plaintiff received and reviewed this policy when he was a SINTF agent.  RSUF ¶ 5.

Plaintiff continued to speak with Mellow after Santana's arrest.  RSUF ¶ 85.  He did not, however, continue to abide by SINTF's policy for agent-informant communication.  RSUF ¶¶ 96-97.  By January 2014, Mellow and Plaintiff were romantically involved.  RSUF ¶ 103.  Plaintiff engaged in a range of misconduct to pursue and protect his relationship with Mellow in the nine months that followed.  See RSUF ¶¶ 14-16, 19.  Specifically, Plaintiff made false reports to law enforcement dispatch; disclosed confidential automated records to without authorization; revealed confidential information about SINTF operations; lied to his SINTF commander about his relationship with Mellow; and coordinated with Mellow to cover up their affair.  Id.

In September 2014, the CHP Internal Affairs Section began investigating Plaintiff's relationship with Mellow.  RSUF ¶ 44.

This investigation came on the heels of a domestic incident at Mellow's home involving Plaintiff. On August 31, 2014, Plaintiff left a greeting card on a car in Mellow's front yard. RSUF ¶ 48. The card revealed Plaintiff's romantic feelings for Mellow and included statements such as:

- "Since our first date (12/6/13), I have not been the same… And our walk across the bridge and kiss on the cheek shortly after your innocent text 'Marry me' has me wanting to ask you the same thing.";
- "Please know I want to spend forever with you as us !!!";
- "I want to make you happier than you've ever been before, just like you were in Tahoe . . . ."; and
- "I love you for who you are Tawnya Rachelle and want nothing more than to unite as one!!"

RSUF ¶¶ 68, 70. Santana discovered the card and forced Mellow to tell him who sent it. RSUF ¶¶ 46-47, 59. After Santana left, Mellow's daughter called the police. RSUF ¶ 83. Mellow told the responding officers that Santana struck her in the face and threatened to kill her if she didn't tell him who left the card. RSUF ¶ 48. The officers then told Commander James about Plaintiff's involvement. RSUF ¶ 80.

Investigators Scott Lunardi and Mel Hutsell led the Internal Affairs investigation. RSUF ¶ 44. They interviewed Mellow, Santana, James, and several SINTF agents. RSUF ¶¶ 57, 62, 76, 96-97. They also reviewed Plaintiff's personnel file, Plaintiff's SINTF phone, the greeting card Plaintiff sent Mellow, Mellow's domestic violence report, closed incident reports and audio reports Plaintiff made about Mellow, and materials relating

to both state and federal criminal investigations of Santana. RSUF ¶¶ 45, 47, 49, 51, 53, 68, 74, 95. Based on the information Lunardi and Hutsell gathered, they developed reasonable suspicion that Plaintiff and Mellow were in a romantic relationship prohibited by CHP policy. RSUF ¶ 103. The investigators also suspected, given the absence of texts with Mellow on Plaintiff's SINTF phone, that Plaintiff was using his personal device to contact her. RSUF ¶ 104.

The Internal Affairs Section Commander, R.J. Jones, ordered Plaintiff to produce his personal cell phone so investigators could search the device for work product. RSUF ¶¶ 105, 109-10. Plaintiff initially refused, but ultimately turned over his phone. RSUF ¶ 111, 113. Lunardi, along with CHP Officer Kevin Domby and Computer Crimes Investigator Curtis Duray, attempted to extract Plaintiff's texts with Mellow from Plaintiff's phone. RSUF ¶ 114. After two of the department's forensic extraction tools failed to connect with Plaintiff's phone, the officers tried to video record the string of messages in Plaintiff and Mellow's text thread. RSUF ¶¶ 115-16. The investigators found this approach proved too time intensive, so they created a backup of Plaintiff's entire phone on Duray's computer. RSUF ¶¶ 117, 119. The investigators then extracted Plaintiff's messages with Mellow from that backup. RSUF ¶ 123.


II. OPINION

A. Request for Judicial Notice

Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because

6

it (1) is generally known within the trial court's territorial

jurisdiction; or (2) can be accurately and readily determined

from sources whose accuracy cannot reasonably be questioned."

FRE 201(b).

Plaintiff requests the Court take judicial notice of the

following filings in this proceeding:

- Plaintiff's compliant, filed November 24, 2015;

- The Court's November 14, 2016 order and memorandum;

- Plaintiff's second amended complaint, filed November 23,
  2016; and

- Defendants' answer to Plaintiff's second amended
  complaint, filed May 15, 2017.

Plf.'s Request for Judicial Notice ("Plf.'s RJN"), ECF No. 52-4.

The Court need not take judicial notice of prior filings in its

own case.  See Hardesty v. Sac. Metropolitan Air Quality

Management Dist., 935 F.Supp.2d 968, 979 (E.D. Cal. 2013).  The

Court therefore denies Plaintiff's request for judicial notice.

Defendants also filed a request for judicial notice.

Defs.' RJN, ECF No. 42-4.  Defendants request the Court take

judicial notice of:

- Eastern District of Missouri's order in Manasco v. Bd. Of
  Police Comm'rs, No. 4:11-cv-00557-CDP, at *4-7 (E.D. Mo.
  Apr. 1, 2011) (available at
  http://www.aele.org/manasco.pdf); and

- Transcript of the September 17, 2014 Proceedings in Shasta
  County Superior Court for People of the State of California
  v. Robin Carl Rudolph and Nathan John Santana, No. 13F7922.

Defs.' RJN at 1-2.

A Court may take judicial notice of matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). But in doing so, a court cannot assume the truth of the information contained therein.  Id. at 689-90.  Bearing this caveat in mind, the Court finds the Manasco decision and the September 17, 2014 proceeding in People v. Rudolph, et al. are proper subjects of judicial notice.  The Court grants Defendants' request.

B.    Evidentiary Objections

Plaintiff objects to several of Defendants' statements of undisputed facts.  See generally RSUF.  The Court reviewed these evidentiary objections but declines to rule on them.  Courts self-police on evidentiary issues arising at the motion for summary judgment stage.  Formal evidentiary rulings are unnecessary. See Henry v. Central Freight Lines, Inc., No. 2:16-cv-00280-JAM-EFB, 2019 WL 2465330, at *2 (E.D. Cal. June 13, 2019); Burch v. Regents of the University of California, 433 F.Supp.2d 1110, 1118-1122 (E.D. Cal. 2006).

C.    Analysis

1.    Spoliation

The Court first addresses Plaintiff's contention that Defendants engaged in spoliation.  Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation."  Kearny v. Foley & Lardner, LLP, 590 F.3d 636, 649 (9th Cir. 2009).  Rules against spoliation are rooted in litigants' "duty to preserve evidence which [they know], or reasonably should know, is relevant in [an] action."

8

Harbor v. Cherniss, 2017 WL 2472242, at *2 (E.D. Cal. June 8, 2017) (quoting Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)); see also Fed. R. Civ. Proc. 37(e). This duty to preserve encompasses information that is "reasonably calculated to lead to the discovery of admissible evidence, [] reasonably likely to be requested during discovery, and/or the subject of a pending discovery request." Id. It applies throughout litigation but also "to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." Id. So long as a party owes this duty to opposing counsel, it must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." Id. (quoting In re Napster, Inc. Copyright Litig., 462 F.Supp.2d 1060, 1070 (N.D. Cal. 2006)).

Plaintiff argues Defendants violated their duty to preserve relevant evidence when they allowed Duray to "wipe" all data from the computer used to backup Plaintiff's phone and return the computer to the Secret Service. Opp'n at 21-24. Plaintiff contends a "forensic analysis [of] the actual computers and data could reveal exactly what was searched, when, and by whom." Id. at 24. By "deleting this data and giving the computer away," Defendants "preclude[d] [him] from proving his central allegation, namely that his personal data was seized, searched, and kept in CHP control for an impermissibly lengthy period of time." Id.

But as Defendants argue, the Court cannot reach the merits of Plaintiff's spoliation claim because of his inexplicable

delay in raising it. Although specific deadlines vary across courts, it is well-established that "unreasonable delay can render a spoliation motion untimely." Cottle-Banks v. Cox Communications, Inc., No. 10-cv-2133-GPC-WVG, 2013 WL 2244333, at *16 (S.D. Cal. May 21, 2013) (collecting cases). In Rhabarian v. Cawley, No. 10-cv-00767, 2014 WL 546015, at *3 (E.D. Cal. Feb. 11, 2014), this Court found a spoliation claim untimely when a party raised it after the close of discovery. The Court found that although "Plaintiffs' allegations of spoliation [were] troubling . . . the time to raise these issues was during discovery, and not after the deadline for dispositive motions." Other federal district courts in California have allowed parties to raise spoliation claims after the close of discovery. See, e.g., Sherwin-Williams Co. v. JB Collision Services, Inc., No. 13-cv-1946-LAB-WVG, 2015 WL 4077732, at *2 (S.D. Cal. July 6, 2015). They nonetheless insist parties raise these types of claims "as soon as reasonably possible after [uncovering] the facts that underlie the motion." Id.; Montoya v. Orange County Sheriff's Dept., No. SACV 11-cv-1922-JGB-RNB, 2013 WL 6705992, at *6 (C.D. Cal. Dec. 18, 2013). Based on the record here, the Court cannot find Plaintiff met either standard.

In September 2018, Defendants produced Officer Duray's report to Plaintiff. Daily Decl. ¶ 4, ECF No. 53-1. Duray's report explained that the CHP officers downloaded the contents of Plaintiff's cell phone onto Duray's laptop and then transferred it to another laptop. Id. Plaintiff did not conduct further discovery on either of those laptops. Id. In

March 2019, at Duray's deposition, Duray again explained that the officers used Duray's laptop to download the contents of Plaintiff's personal phone. Opp'n at 21. Duray testified that he "wiped" his laptop and returned it to the Secret Service in 2016. Id. Plaintiff then waited over nine months to raise a claim of spoliation—after discovery closed and the dispositive motion deadline passed. See ECF Nos. 33, 34. Plaintiff's opposition does not explain why his nine-month delay is reasonable; nor can the Court identify a sound basis for reaching that conclusion. For this reason, the Court denies Plaintiff's motion for Rule 37(e) spoliation sanctions.

### 2. Kyle Foster

Defendants argue the Court should grant summary judgment on Plaintiff's claims against Kyle Foster. Mot. at 29-30. As Defendants argue, Plaintiff did not produce any evidence that Foster participated in the administrative investigation that gave rise to the alleged Fourth Amendment violation. See id. Plaintiff does not oppose Defendants' arguments about Foster's lack of participation. Indeed, Plaintiff concedes the following: (1) Foster had no knowledge that CHP intended to take possession of Plaintiff's phone, RSUF ¶ 129; (2) Foster did not participate in extracting or reviewing any data from Plaintiff's personal cell phone, RSUF ¶ 130; and (3) Plaintiff has no personal knowledge regarding Foster's role in the investigation into Plaintiff's misconduct, RSUF ¶ 131. Given these concessions, the Court finds that Plaintiff's claims that Foster conducted either an unlawful search or seizure fail as a matter of law. See Jones v. Williams, 297 F.3d 930, 934-35 (9th Cir. 2002). The Court

11

therefore grants Defendants' motion for summary judgment on all of Plaintiff's claims against Foster.

### 3. Section 1983

Section 1983 of the Civil Rights Act creates a private right of action against any person who, under the color of state law, deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. But qualified immunity shields state officials from liability when the conduct challenged "does not violate clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Defendants maintain their limited inspection of Plaintiff's texts to Tawnya Mellow as part of their administrative investigation was constitutional. Mot. at 9-25. Even if the search violated the Fourth Amendment, Defendants argue, clearly established law did not proscribe their conduct at the time it occurred. Mot. at 30-33. Absent a violation of clearly established constitutional law, Defendants conclude they are entitled to qualified immunity against Plaintiff's Fourth Amendment claims in their entirety. Id.

As a preliminary matter, the Court finds Defendants' motion fails to meaningfully distinguish Plaintiff's Fourth Amendment claim of unlawful search from his claim of unlawful seizure under the same amendment. Plaintiff's operative complaint alleges Defendants' violated his Fourth Amendment rights because they subjected him to an unreasonable search and an unreasonable seizure. SAC ¶ 33(a). Plaintiff's opposition to Defendants' motion for summary judgment confirms that he is challenging the

12

constitutionality of both the acquisition of his cell phone's contents and the subsequent inspection of that information. See, e.g., Opp'n at 3, 9-13. Accordingly, the Court reads the complaint as raising two distinct theories of liability under Section 1983: (1) Defendants conducted an unlawful seizure under the Fourth Amendment when they downloaded the contents of Plaintiff's cell phone onto a CHP computer; and (2) Defendants conducted an unlawful search under the Fourth Amendment when they inspected the contents of Plaintiff's cell phone. See Soldal v. Cook County, III, 506 U.S. 56, 63 (1992) ("[T]he Fourth Amendment 'protects two types of expectations, one involving searches, the other seizures.'") (quoting U.S. v. Jacobsen, 466 U.S. 109, 112 (1984)). As noted above, Defendants' opening brief only addressed Plaintiff's unlawful-search theory. Plaintiff's unlawful-seizure theory was addressed for the first time in Defendants' reply. The Court therefore grants Plaintiff the opportunity to file a surreply, addressing the arguments Defendants raised against his unlawful seizure theory in their reply. Plaintiff must file his surreply within seven (7) days of this order; it may not exceed ten (10) pages.

Defendants' motion for summary judgment does, however, properly challenge Plaintiff's claim that that Defendants conducted an unlawful search of his phone. The Court finds Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claim to the extent that it is premised upon this theory of Fourth Amendment liability.

a.   Qualified Immunity

Qualified immunity aims to "balance two important

13

interests—the need to hold public officials accountable when the exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when the perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). As the name of the doctrine suggests, qualified immunity is not "a mere defense to liability;" it is an immunity from suit. Id. Law enforcement officers are entitled to this immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019). Accordingly, courts deciding whether an officer is properly immune from suit ask two questions: (1) did the officer's conduct violate a federal right? and (2) was that right clearly established at the time the officer's conduct occurred?

(i) Constitutional Violation

The Fourth Amendment, incorporated against the states by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, house, papers, and effects against unreasonable searches and seizures." U.S. CONST. Amend. IV. As the text indicates, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Riley v. California, 573 U.S. 373, 381 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). But before a court determines whether a search was reasonable, it must first ask whether there was a search at all. O'Connor v. Ortega, 480 U.S. 709, 717-18 (1987) (plurality opinion); Katz v. United States, 389 U.S. 347, 351 (1967).

A search occurs when a state official intrudes upon a

person's reasonable expectation of privacy.  U.S. v. Jones, 565
U.S. 400, 406 (2012); O'Connor, 480 U.S. at 715.  To be
"reasonable," the expectation must be one that society would
find objectively reasonable; it must also be an expectation that
is subjectively held.  Id.; Katz, 389 U.S. at 361 (Harlan,
concurring).  As the O'Connor plurality explained, "the
reasonableness of an expectation of privacy . . . is understood
to differ according to context."  480 U.S. at 716.  In the
workplace, for example, "operational realities" may "diminish an
employee's privacy expectations," particularly "when an
intrusion is by a supervisor rather than a law enforcement
official."  Id. at 717.  This diminution may result from "office
practices and procedures[] or [] legitimate regulation."  Id.

Plaintiff argues Defendants' inspection of his phone is a
mirror image of what happened to the petitioner in Riley v.
California, 573 U.S. 373 (2014).  Reading the decision as a per
se bar to warrantless cell phone searches, Plaintiff contends
Riley should be the beginning and end of this Court's analysis.
Opp'n at 15-16.  But Riley does not represent the broad
proposition for which Plaintiff advocates.  In Riley, police
officers stopped a man for a traffic violation.  Id. at 378.
The officers conducted a search incident to arrest, seizing the
man's cell phone and looking through its contents.  Id. at 378-
79.  The Supreme Court took for granted that this conduct
amounted to a search and proceeded to the question of whether
the search was reasonable.  Id.  More specifically, it addressed
whether the search-incident-to-arrest exception to the Fourth
Amendment's warrant requirement applied to searches of a cell

phone's contents. Id. at 382. The Court found the exception did not apply but left open the possibility that other exceptions to the warrant requirement might permit a warrantless cell phone search. Id. at 401.

Riley is not sufficiently similar to the case at hand to inform this Court's analysis. Even setting aside the narrowness of Riley's legal holding, the factual distinctions between this case and Riley prevent the case from being a helpful comparator. Riley involved a criminal investigation that resulted in the search of personal information on a personal device. Plaintiff argues Defendants' investigation was likewise criminal in nature and that their search of his cell phone encompassed purely personal information. But Plaintiff does not produce any evidence to this effect. See RSUF ¶¶ 126, 133. Indeed, the only evidence before the Court paints a different picture—one where Defendants, acting as supervisors rather than law enforcement, conducted an administrative investigation into Plaintiff's misconduct. See RSUF ¶¶ 25-27, 29, 38-41. As part of that inspection, they reviewed text messages that CHP considered work product under its governing policy. See RSUF ¶ 105. Plaintiff's deposition testimony that he felt like Defendants were treating him "like a criminal" is insufficient to give rise to a genuine dispute of material fact about whether Defendants' investigation was, in fact, criminal. See Exh. A to Mot. at 203:20-23. For this reason, City of Ontario, Cal. v. Quon, not Riley, is more instructive. See 560 U.S. 746 (2010).

In Quon, 560 U.S. at 758-59, the Supreme Court confronted a workplace investigation comparable to the one at issue here.

The City of Ontario issued pagers to its SWAT team so the members could mobilize and respond to emergency situations. Id. at 751. The City had a "computer usage, internet, and e-mail policy" whereby it "reserve[d] the right to monitor and log all network activity." Id. The policy cautioned users that they "should have no expectation of privacy or confidentiality when using these resources." Id. When the City issued the pagers, it explained that pager messages fell within this policy even though they did not technically use the City's network. Id. Following several months of pager overage fees, the police chief decided to audit Quon's text messages. Id. at 752. He acquired and read transcripts of the messages Quon sent during the workday over a two-month period. Id. at 752-53. Quon filed suit, arguing this amounted to an unconstitutional search. Id. at 753-54.

In arriving at its conclusion that the City's audit did not violate the Fourth Amendment, the Supreme Court assumed without deciding that Quon had a reasonable expectation of privacy in the messages he sent with his work pager. Id. at 759-61. The Court found it necessary to "proceed with care when considering the whole concept of privacy expectations made on electronic equipment owned by a government employer." Id. at 759. It further voiced uncertainty about "how workplace norms, and the law's treatment of them will evolve" in light of "[r]apid changes in the dynamics of communication and information transmission." Id.

This Court finds itself in a similar position. Much like Quon, Plaintiff comingled his work life and personal life on a

17

single device.  RSUF ¶¶ 85, 101, 104.  Quon used a work device

for personal communication; Plaintiff used a personal device to

engage in CHP-regulated communication.  Id.; Quon, 560 U.S. at

752-54.  This Court heeds Quon's warning against broadly

prescribing the scope of a person's privacy expectations when

work content and personal content coexist on one device.  See

Quon, 560 U.S. at 759-61.  For this reason, the Court, as Quon

did, assumes arguendo that Defendants conducted a search, but

finds that search was reasonable under the Fourth Amendment.

Warrantless searches are "per se unreasonable—subject only

to a few specifically established and well delineated

exceptions."  United States v. Hawkins, 249 F.3d 867, 872 (9th

Cir. 1990).  In O'Connor, a plurality of the Supreme Court

carved out an exception to the warrant requirement for searches

that occur pursuant to a subset of workplace inspections.  A

majority adopted that exception in Quon:

> When conducted for a noninvestigatory, work-related
> purpos[e] or for the investigation of work-related
> misconduct, a government employer's warrantless search
> is reasonable if it is justified at its inception and
> if the measures adopted are reasonably related to the
> objectives of the search and not excessively intrusive
> in light of the circumstances giving rise to the
> search.

560 U.S. at 761-62 (quoting O'Connor, 480 U.S. at 725-26).

As explained above, Plaintiff failed to produce any

evidence that Defendants' search occurred pursuant to a criminal

investigation, rather than an investigation of work-related

misconduct.  The Court therefore finds that the O'Connor/Quon

exception sets forth the governing standard for whether

Defendants' search was reasonable.

18

Moreover, the Court finds Defendants' inspection of CHP work product was in fact justified at its inception, reasonably related to the objectives of their search, and appropriate in light of the surrounding circumstances. Plaintiff had inexplicably left a romantic greeting card at the residence of a confidential informant and the target of a criminal investigation. RSUF ¶ 48. This card gave rise to a domestic violence incident that jeopardized Mellow's safety. Id. It also resulted in the dismissal of federal charges against Santana. RSUF ¶ 12. The undisputed facts show that CHP sought to understand the scope of Plaintiff's communication with Mellow and mitigate harm that might flow from his potential misconduct. RSUF ¶¶ 18, 21. They also show that Defendants limited their search, even within Plaintiff's texts with Mellow, to a subset of messages spanning from September 1, 2013 (the month Mellow initially contacted SINTF with information about Santana) to November 5, 2014 (the day before CHP directed Plaintiff to produce his phone). RSUF ¶ 107. In this respect, the case again resembles Quon, 560 U.S. at 761-62 (finding a public employer's tailored review of an employee's text messages was reasonable in light of the surrounding circumstances). To be sure, issues regarding the reasonableness of Defendants' seizure of Plaintiff's data remain. But Defendants' limited search of Plaintiff's texts with Mellow was reasonably related to the objectives of the investigation and not excessively intrusive given the grave abuse of power suspected. See Mot. at 25-28.

For the reasons discussed above, Plaintiff failed to raise a genuine issue of material fact about whether Defendants'

inspection of his text messages with Mellow violated the Fourth
Amendment.

### (ii) Clearly Established

Even if Defendants' inspection of Plaintiff's text exchange
with Mellow was an unreasonable search, it did not violate a
right that was clearly established at the time Defendants'
conduct occurred.  Courts must define clearly established rights
"with specificity."  _Emmons_, 139 S. Ct. at 503.  A right is not
clearly established unless its "contours [are] sufficiently
definite that any reasonable officer would have understood that
he was violating it."  _Id._ (quoting _Kisela v. Hughes_, 138 S. Ct.
1148, 1153 (2018).  None of the cases Plaintiff cites in support
of his claim that his right to be free from Defendants' search
was clearly established provides a closer analog than _Quon_, 560
U.S. at 758-65.  But _Quon_ cuts against, not toward, the
existence of Plaintiff's claimed protection.  Accordingly, the
Court finds Plaintiff failed to raise a genuine dispute of
material fact about whether Defendants violated a clearly
established Fourth Amendment right.

### (iii) Conclusion

Defendants are entitled to qualified immunity with respect
to Plaintiff's claim that the inspection of his text messages
with Mellow amounted to an unlawful search.  The Court grants
Defendants' motion for summary judgment on this claim.

### 4.  Bane Act

The Bane Act allows an individual "whose exercise or
enjoyment of rights secured by the constitution . . . has been
interfered with" to "institute and prosecute . . . a civil action

for damages." Cal. Civ. Code § 52.1(c).  Under the Bane Act, a
plaintiff must prove that the person who interfered with his
constitutional rights did so "by threat, intimidation, or
coercion" or acted with the "particular purpose" of depriving him
of those rights.  Id.; Cornell v. City & Cnty. of San Francisco,
17 Cal. App. 5th 766, 803 (2017).  To prove "threat,
intimidation, or coercion," a plaintiff must in most cases
identify more than "speech alone."  Cal. Civ. Code § 52.1(k).

Defendants argue they are entitled to summary judgment on
Plaintiff's Bane Act claim because Plaintiff's unlawful search
claim fails as a matter of law and because Plaintiff failed to
produce any evidence that Defendants violated his rights "by
threat, intimidation, or coercion."  Mot. at 33-34.  The Court
agrees with both arguments.  As discussed above, Plaintiff's
unlawful search claim fails as a matter of law.  To the extent
that Plaintiff's Bane Act claim rests upon this alleged
constitutional violation, it fails as well.

But Plaintiff's Bane Act claim also fails because he has not
produced any evidence that he was threatened, intimidated, or
coerced in a cognizable way.  Plaintiff concedes that Defendants
did not verbally threaten him with violence, retaliation,
criminal charges.  Ex. 1 to Mot. at 212:19-214:20. He argues
instead that a January 30, 2015 memorandum amounted to a threat
of arrest.  Opp'n at 30 (citing Cuveillo v. City of Stockton, No.
07-cv-1625-LKK-KJM, 2009 WL 9156144, at *17 (E.D. Cal. Jan. 26,
2009)).

Even when viewing the facts in the light most favorable to
Plaintiff, no reasonable juror could read this memo as a threat

of criminal arrest.  The January 30, 2015 memo is from the "Internal Affairs Section" of the CHP.  <u>See</u> Exh. 28 to Mot., ECF No. 43-1.  It is titled "NOTICE OF ADMINISTRATIVE INTERROGATION." <u>Id.</u>  And it states that the investigation will be conducted by members of the Internal Affairs Section.  <u>Id.</u>  Nothing in the memo refers to prosecution, arrest, a violation of criminal law, or any form of detention.

Because Plaintiff failed to produce evidence of threat, intimidation, or coercion, Defendants are entitled to judgment on the Bane Act claim under both of Plaintiff's theories of constitutional liability.  Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's Bane Act claim in its entirety.

III.  ORDER

For the reasons set forth above, the Court GRANTS IN PART Defendants' motion for summary judgment.  The Court grants Defendants' motion for summary judgment on Plaintiff's Bane Act claim against Lunardi, Jones, and Foster, as well as his Section 1983 claim against Foster.  The Court also grants Defendants' motion for summary judgment on Plaintiff's Section 1983 claim against Lunardi and Jones to the extent that it rests upon the theory that they conducted an unconstitutional search.

Defendants' request for summary judgment on Plaintiff's remaining claim that Defendants conducted an unlawful seizure by downloading the contents of his personal phone onto a CHP computer is taken under submission.  Plaintiff shall file his surreply within seven (7) days of this Order.  The Court will

issue a separate Order regarding this claim after reviewing

Plaintiff's surreply.

    IT IS SO ORDERED.

Dated: March 4, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE