UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY LARIOS,<br><br>      Plaintiff,<br><br>  v.<br><br>SCOTT LUNARDI and ROBERT J. JONES,<br><br>      Defendants. | No. 2:15-cv-02451-JAM-DMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

In October 2019, Scott Lunardi, Kyle Foster, and Robert Jones filed a motion for summary judgment. Mot. for Summ. J. ("Mot."), ECF No. 42. With one exception, the Court granted judgment in favor of Defendants on each of Plaintiff's claims. Order Granting in Part Defs.' Mot. for Summ. J., ECF No. 55. The Court deferred ruling on Defendants' challenge to Plaintiff's claim that Lunardi and Jones partook in an unlawful seizure when they allowed CHP investigator Curtis Duray to download the contents of Plaintiff's personal phone onto a CHP computer. Order at 2-3. The Court granted Plaintiff leave to file a surreply so he could respond to arguments Defendants raised for the first time in their reply brief on this issue. Order at 22-23; see also Plf's. Surreply, ECF No. 56.

For the reasons set forth below, the Court finds Jones was not an integral participant in Duray's seizure. Consequently,

the Court finds that he can not be held liable for Duray's conduct under Section 1983. Lunardi was, however, an integral participant in this seizure—a seizure that violated Plaintiff's Fourth Amendment rights. But because the right was not clearly established when the seizure occurred, Lunardi is entitled to qualified immunity. The Court grants Defendants' motion for summary judgment on Plaintiff's unlawful seizure claim against both Lunardi and Jones.

## I. BACKGROUND

The Court refers the parties to its previous order, ECF No. 55, where it set forth this case's procedural history and relevant undisputed facts. See also Larios v. Lunardi, No. 2:15-cv-02451-JAM-DMC, 2020 WL 1062049, at *1-3 (E.D. Cal. March 5, 2020).

## II. OPINION

A. Analysis

Section 1983 of the Civil Rights Act creates a private right of action against any person who, under the color of state law, deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Qualified immunity, however, shields state officials from liability under this provision unless the official's conduct violated a constitutional or statutory right that was "clearly established" when the conduct occurred. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This standard requires courts to determine whether the official's conduct violated a federal right and whether that right was clearly established at the time the officer's conduct occurred. Pearson

v. Callahan, 555 U.S. 223, 243-44 (2009). Only when the answer to both questions is 'yes' may a plaintiff sue a state official under section 1983. Id.

### 1. Constitutional Violation

Plaintiff's remaining claim contends Lunardi and Jones participated in an unconstitutionally overbroad seizure when their colleague, Curtis Duray, created a backup of Plaintiff's personal cell phone on a CHP computer. Sec. Am. Compl. ("SAC") ¶ 33(a). The Fourth Amendment, incorporated against the states by the Fourteenth Amendment, "proscribes unreasonable searches and seizures." Florida v. Bostick, 501 U.S. 429, 440 (1991). Within the Fourth Amendment context, a seizure is any "meaningful interference with an individual's possessory interests in [his] property." Brewster v. Beck, 859 F.3d 1194, 1196 (9th Cir. 2017).

When the Court adjudicated Plaintiff's unconstitutional search claim, it had to first determine whether Defendants conducted a search at all. Order at 14-18. Here, however, Defendants do not contest whether downloading the contents of Plaintiff's personal phone onto a workplace computer amounted to a seizure. Rather, they argue that (1) Duray—a CHP investigator not named in Plaintiff's suit—was the only officer that conducted the seizure and (2) the seizure was reasonable. Reply at 5-6. The Court agrees with Defendants only in part.

First, it is true that the undisputed facts show Duray created the backup of Plaintiff's phone. See RSUF ¶ 118; Duray Decl. ¶¶ 16-17, ECF No. 42-11; Lunardi Decl. ¶ 77, ECF No. 42-5. But this fact, in and of itself, does not necessarily absolve

3

Defendants of liability. Section 1983 does not require that "each officer's actions themselves rise to the level of a constitutional violation." Boyd v. Benton County, 374 F.3d 773, 780 (9th Cir. 2004). If an officer was "fundamental[ly] involve[d] . . . in the conduct that allegedly caused the violation," the officer may be liable as an "integral participant." Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007); see also Monteilh v. County of Los Angeles, 820 F. Supp. 2d 1081, 1089-91 (C.D. Cal. 2011).

The Court finds Jones was not sufficiently involved in Duray's seizure of Plaintiff's data to be liable under the integral participant doctrine. Jones signed the memorandum that directed Plaintiff to provide his cell phone to CHP. RSUF ¶ 110; Jones Decl. ¶ 15, ECF No. 42-9; Ex. 22 to Defs.' Mot., ECF No. 43-1. The memo explained that CHP would "conduct a data extraction to retrieve the work product" stored on Plaintiff's phone. Ex. 22 to Defs.' Mot. But as explained below, had Duray and Lunardi only extracted the work product discussed in Jones's memo, the seizure would have fallen within the workplace inspection exception to the Fourth Amendment's warrant requirement. Plaintiff presents no evidence that Jones intended the investigators' seizure to extend more broadly than his memo described or that he ever authorized the seizure Duray ultimately conducted. Because Jones was not fundamentally involved in the seizure Plaintiff challenges, the Court cannot hold Jones liable under section 1983. The Court grants Defendants' motion for summary judgment with respect to Plaintiff's unconstitutional seizure claim against Jones.

4

Lunardi, on the other hand, was fundamentally involved in the process of seizing data from Plaintiff's phone. RSUF ¶ 114. He brought Plaintiff's phone to Duray for the forensic extraction Jones authorized. Id. When the forensic extraction devices did not work, he partook in the deliberative process of deciding upon alternative ways to extract the data. See RSUF ¶¶ 116-17. He helped Duray use a digital camera to record the messages between Plaintiff and Mellow. RSUF ¶ 116; Duray Decl. ¶ 14; Lunardi Decl. ¶ 76. And he tacitly stood by as Duray created a backup of Plaintiff's phone—even though he knew this seizure exceeded the one Jones authorized. See RSUF ¶ 119; Lunardi Decl. ¶¶ 72, 77. Once Duray completed the backup, Lunardi retrieved the phone without objection. See RSUF ¶ 121; Duray Decl. ¶ 17; Lunardi Decl. ¶ 77. The Court finds this level of involvement is enough to make Lunardi an integral participant in the challenged seizure. Because this seizure was unreasonable, Lunardi partook in the constitutional violation.

Warrantless seizures are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Beck, 859 F.3d at 1196 (quoting United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (internal quotation marks and citation omitted)). Defendants do not argue Duray had a warrant to seize the contents of Plaintiff's cell phone. Rather they invoke the workplace inspection exception to the Fourth Amendment's warrant requirement. Reply at 3-4. As its title suggests, the workplace inspection exception pulls certain workplace searches and seizures out from under the Fourth Amendment's warrant

requirement. To trigger this exception, a public employer must conduct the search or seizure for a "noninvestigatory, work-related purpos[e]" or to investigate workplace misconduct. City of Ontario, Cal. v. Quon, 560 U.S. 747, 761-62 (2010); O'Connor v. Ortega, 480 U.S. 709, 725-26 (1987) (plurality opinion). Moreover, the search or seizure must be "justified at its inception" and conducted using measures that are "reasonably related to the objectives of the search and not excessively intrusive." Quon, 560 U.S. at 761-62. To determine whether the measures an employer takes are "reasonably related" to the scope of the inspection, courts must consider the circumstances that gave rise to the search or seizure. Id.

The Court first finds Duray seized the contents of Plaintiff's cell phone pursuant to a valid investigation of workplace misconduct. As explained in the Court's previous order, Plaintiff failed to produce any evidence that the investigation was criminal in nature. See Order at 16. Moreover, the Court finds Defendants' seizure was "justified at its inception." See Quon, 560 U.S. at 761. The undisputed facts show CHP policy required officers to relinquish on demand any work product they stored on their personal devices. RSUF ¶ 4 (citing CHP General Order 100.95). CHP's investigation of Plaintiff's relationship with Tawnya Mellow reasonably gave rise to the belief that Plaintiff communicated with a confidential informant using his personal cell phone. RSUF ¶¶ 103-04. CHP policy considered any such messages to be work product. RSUF ¶ 4. Defendants initially planned to only extract that work product. RSUF 115. A customized data withdrawal would have

fallen squarely within the workplace inspection exception. See Quon, 560 U.S. at 761-62 (finding a public employer's tailored review of an employee's text messages was reasonable in light of the surrounding circumstances).

But Duray ultimately seized more than the work-related text messages. RSUF ¶ 119. Indeed, he seized all the data stored on Plaintiff's personal cell phone. Id. Defendants urge the Court to find that this seizure, though indiscriminate, was nonetheless reasonably related to the surrounding circumstances. Reply at 4-5. The Court has already acknowledged the circumstances surrounding Plaintiff's misconduct justified a careful, timely investigation. Order at 4. In an effort to both pursue and conceal his relationship with Mellow, Plaintiff made false reports to law enforcement dispatch; disclosed confidential automated records to Mellow without authorization; revealed confidential information about SINTF operations; lied to his SINTF commander; and coordinated with Mellow to cover up their relationship. RSUF ¶¶ 14-16. Plaintiff's conduct compromised federal and state criminal investigations. RSUF ¶¶ 12, 23. It also jeopardized safety of Mellow and Plaintiff's fellow officers. RSUF ¶ 18. CHP Investigators had reason to believe that the information contained in Plaintiff's text messages with Mellow would help them mitigate harm resulting from Plaintiff's actions. See, e.g., Jones Decl. ¶ 4-10, ECF No. 42-9.

But the workplace inspection exception places limits on what measures an employer may take to gather information related to workplace misconduct—even when that information is really

important. The measures must be "reasonably related" to the circumstances that gave rise to the seizure "and not excessively intrusive." Quon, 560 U.S. at 761-62. Downloading all the cell phone's data to retrieve a single thread of texts is like watering a plant with a firehose. The means far exceeds the need.

This is true notwithstanding Defendants' argument that the investigators tried other, less intrusive, methods first. See Mot. at 7-8. Lunardi and Duray initially tried to extract Plaintiff's messages with Mellow directly from the phone—first, using CHP's forensic tools to extract the data, and then, using a digital camera to manually record the message thread. Mot. at 7-8. Neither method proved successful. But the question of whether the measures Defendants used to conduct their seizure were "excessively intrusive" is a question of fit, not a question of how many other methods were tried first. See Quon, 560 U.S. 761-63. With Quon's discussion of intrusiveness in mind, it is hard to imagine how Duray's seizure here could have been more overbroad. Id. Riley v. California, 573 U.S. 373, (2014), though addressing distinct legal issues, provides a description of cell phones' storage capacity that helps illuminate the intrusiveness of the seizure in this case:

> [T]he possible intrusion on privacy is not physically limited . . . when it comes to cell phones. The current top-selling smart phone has a standard capacity of 16 gigabytes (and is available with up to 64 gigabytes). Sixteen gigabytes translates to millions of pages of text, thousands of pictures, or hundreds of videos. (citation omitted). . . . The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions . . . .

Id. at 394. The volume of data Duray seized was vastly disproportionate to the amount of work product Defendants suspected to find on Plaintiff's phone. Because this seizure was excessively intrusive in light of the surrounding circumstances, the workplace inspection exception does not apply.

Absent a valid exception to the warrant requirement, Duray's seizure violated Plaintiff's Fourth Amendment rights. Lunardi was an integral participant in this constitutional violation.

### 2. Clearly Established

A law enforcement officer who violates a person's constitutional rights will still be entitled to qualified immunity if that right was not clearly established at the time the violation occurred. Fitzgerald, 457 U.S. at 818. Courts must define clearly established rights "with specificity," based upon the facts of each case. City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019). A right is not clearly established unless its "contours [are] sufficiently definite that any reasonable officer would have understood that he was violating it." Id. (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018)).

As Defendants argue, Plaintiff failed to identify any cases that clearly proscribed Duray's seizure. Reply at 13-14. Plaintiff cites to several cases in support of his argument that Duray's seizure violated his clearly-established Fourth Amendment rights. Opp'n at 9-13, 27 (citing Riley v. California, 573 U.S. 373 (2014); United States v. Comprehensive Drug Testing, 621 F.3d 1162 (9th Cir. 2010); United States v. Soriano, 361 F.3d 494 (9th

9

Cir. 2004); United States v. Taketa, 923 F.2d 665, 675 (9th Cir. 1991); United States v. Tamura, 694 F.2d 591 (9th Cir. 1983); United States v. Ganias, 755 F.3d 125 (2d Cir. 2014)). Many of these cases touch upon germane issues that, like this case, lie at the intersection of technology and overbroad seizures. But they do not help define the contours of the workplace inspection exception or how it applies when a public employer extracts work product from an employee's personal cell phone. For this reason, none of the cases Plaintiff cites placed the CHP investigators on "notice [that] their conduct [was] unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

As Plaintiff's right to be free from Duray's overbroad seizure was not clearly established at the time the seizure occurred, Lunardi is entitled to qualified immunity. The Court therefore grants Defendants' motion for summary judgment on Plaintiff's unlawful seizure claim against Lunardi.

### III. ORDER

For the reasons set forth above, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's unlawful seizure claim.

IT IS SO ORDERED.

Dated: April 9, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE